ELIZABETH LUCAS WINSTEAD, WIDOW OF KENNETH E. WINSTEAD, DECEASED; FRANCES A. LUCAS, GUARDIAN AD LITEM FOR CHAD PAUL BREWER AND RONALD CARL BREWER, CLAIMANTS-APPELLEES v. LINDA GAYLE DERREBERRY, GUARDIAN FOR MELANIE RACHELLE WINSTEAD, CLAIMANT-APPELLANT v. VARCO-PRUDEN BUILDINGS, EMPLOYER-APPELLEE, TRAVELERS INSURANCE COMPANY, CARRIER-APPELLEE

No. 8410IC561

(Filed 19 February 1985)

**1. Master and Servant § 79.1— qualification for death benefits—stepchildren—substantial dependency required**

The Industrial Commission's award of death benefits to stepchildren under the Workers' Compensation Act was affirmed where the deceased contributed approximately 69% of the stepchildren's support in 1981 and 84% in 1982. Stepchildren are not conclusively presumed to be wholly dependent upon a supporting stepparent, but are entitled to death benefits if they are in fact "substantially" dependent upon the stepparent. G.S. 97-38 (Cum. Supp. 1983), G.S. 97-39 (1979), G.S. 97-2(12) (1979).

**2. Constitutional Law § 20— recovery of workers' compensation death benefit by stepchildren—no Equal Protection violation**

Allowing non-legally dependent stepchildren to recover death benefits as dependents under the Workers' Compensation Act does not violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States or the fundamental law of North Carolina.

APPEAL by claimant from opinion and award of the Industrial Commission filed 6 April 1984. Heard in the Court of Appeals 17 January 1985.

The pertinent facts relating to this appeal were stipulated by the parties before the Industrial Commission. Kenneth E. Winstead died as the result of an accidental injury arising out of and in the course of his employment with Varco-Pruden Buildings. At the date of death, Kenneth Winstead was married to Elizabeth Lucas Winstead, his second wife. Elizabeth Winstead had two minor children, Chad and Ronald Brewer, by a previous marriage, both under eighteen years of age, and who lived with Kenneth and Elizabeth Winstead. Kenneth Winstead also had a child by a previous marriage, Melanie Rachelle Winstead, who lived with her father and Elizabeth Winstead.

Kenneth and Elizabeth Winstead were both employed, and both contributed to the financial support of the family. Chad and Ronald Brewer received support payments of approximately $100 per month, occasionally $150 per month, from their natural father. Melanie Winstead received some support from her natural mother. Based on the stipulated facts Deputy Commissioner Ed Turlington entered an opinion and award concluding as a matter of law that Chad and Ronald Brewer, as stepchildren of Kenneth Winstead, were conclusively presumed to be wholly dependent upon the deceased at the time of his death, entitling them to share equally in death benefits payable under the Workers' Compensation Act. The Full Commission, upon application of claimant Melanie Winstead, who alleged error in the award of benefits to the stepchildren, affirmed and adopted the Deputy Commissioner's order of benefits to Winstead's stepchildren.

Claimant Melanie Winstead appealed.

*Hunter, Hodgman, Greene, Goodman & Donaldson, by Robert N. Hunter, Jr., for appellant.*

*Ling & Farran, by Stephen D. Ling, for appellees.*

WELLS, Judge.

[1] Claimant Melanie Winstead brings forth four assignments of error to the Commission's order, each challenging payment of

death benefits to deceased's two minor stepchildren under the
Workers' Compensation Act [hereinafter the Act]. These assign-
ments of error essentially present the sole question of whether a
stepchild who is substantially but not legally dependent upon a
stepparent can receive death benefits under the Act, a question of
first impression before our appellate courts. We hold that step-
children are not conclusively presumed to be wholly dependent
upon a supporting stepparent but are entitled to death benefits if
substantially dependent upon the stepparent, and affirm the In-
dustrial Commission's award.

The applicable provisions of the Workers' Compensation Act
provide that:

> If death results proximately from the . . . [covered] acci-
> dent . . . weekly payments of compensation . . . [shall be
> paid] to the person or persons entitled thereto as follows:

> (1) Persons *wholly dependent* for support upon the earn-
> ings of the deceased employee at the time of the accident
> shall be entitled to receive the entire compensation payable
> share and share alike to the exclusion of all other persons.
> . . .

N.C. Gen. Stat. § 97-38 (Cum. Supp. 1983) (emphasis added). A
claimant may be found "wholly dependent" by two distinct
avenues. First, a claimant may be factually determined to be
"wholly dependent" when that person subsists entirely on the
earnings of the decedent worker. The claimant is "wholly depend-
ent" even though occasionally receiving "gratuitous services . . .,
or . . . financial assistance . . ., or . . . other minor considera-
tions or benefits which do not substantially modify or change the
general rule. . . ." *Thomas v. Gas Co.*, 218 N.C. 429, 11 S.E. 2d
297 (1940).

Certain classes of individuals, widow, widower, and child, are
conclusively presumed to be "wholly dependent." N.C. Gen. Stat.
§ 97-39 (1979) states that a:

> [C]hild shall be conclusively presumed to be wholly dependent
> for support upon the deceased employee.

The term "child" is defined by the Act as including a:

---
---

*[S]tepchild or acknowledged illegitimate child dependent upon the deceased*, but does not include married children unless wholly dependent upon him. . . . 'Child' . . . include[s] only persons who at the time of the death of the deceased employee are under 18 years of age.

N.C. Gen. Stat. § 97-2(12) (1979).

We are guided in our determination of this case by time-honored rules of statutory construction with respect to the Workers' Compensation Act.

First, the . . . [Act] should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. . . . Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of 'judicial legislation.' . . . Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid 'ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced.' . . . Fourth, in all cases of doubt, the intent of the legislature regarding the operation or application of a particular provision is to be discerned from a consideration of the Act as a whole—its language, purposes and spirit. . . . Fifth, and finally, the Industrial Commission's legal interpretation of a particular provision is persuasive, although not binding, and should be accorded some weight on appeal and not idly cast aside, since that administrative body hears and decides all questions arising under the Act in the first instance. . . .

*Deese v. Lawn and Tree Expert Co.*, 306 N.C. 275, 293 S.E. 2d 140 (1982) (citations omitted). Melanie Winstead contends that because G.S. § 97-2(12) abrogated the common law rule that a stepchild has no right of support from a stepparent the statute must be strictly construed and the liberal interpretation accorded to the Act only applies in situations where liability, not benefits, is in issue. We disagree. The *Deese* court applied a liberal interpretation standard under facts in which apportionment of benefits, not

liability of the employer, was in issue. *See also e.g., Hewett v. Garrett,* 274 N.C. 356, 163 S.E. 2d 372 (1968).

Applying the *Deese* principles, we begin our review of the legislature's purpose in G.S. § 97-38. It intends that death benefits will be first payable to those who were "wholly" dependent upon the deceased worker for financial support. If any claimant, or more than one claimant, is determined to be "wholly" dependent all death benefits are paid to that individual or individuals. If no claimant is found "wholly dependent" then benefits are paid to any claimant determined "partially dependent" to the exclusion of all others. If no person is either "wholly" or "partially" dependent, death benefits are paid to deceased's "next of kin."

With certain exceptions, not applicable to the facts before us, any individual who is factually "wholly" dependent upon the deceased worker is entitled to share in benefits. *E.g. Thomas v. Gas Co., supra* (deceased's mother); *Scott v. Auman,* 209 N.C. 853, 184 S.E. 830 (1936) (deceased's father). In addition, G.S. § 97-39 conclusively establishes three classes of individuals, widow, widower and children, to be "wholly" dependent, even if not factually dependent. *Compare Bass v. Mooresville Mills,* 11 N.C. App. 631, 182 S.E. 2d 246 (1971), *cert. denied,* 281 N.C. 755, 191 S.E. 2d 353 (1972) (wife living separate from husband under separation agreement and not factually dependent may be entitled to benefits if conjugal relations resumed shortly before deceased's death thereby vitiating separation agreement); *with Sloop v. Exxon Service,* 24 N.C. App. 129, 210 S.E. 2d 111 (1974) (no benefits if valid separation agreement in full force and effect). The terms "child," "widow" and "widower" are defined by G.S. §§ 97-2(12), -2(14), -2(15). *See e.g., Carpenter v. Tony E. Hawley, Contractors,* 53 N.C. App. 715, 281 S.E. 2d 783, *disc. rev. denied,* 304 N.C. 587, 289 S.E. 2d 564 (1981) (child over 18 before decedent's death lost conclusive presumption of "child" and must prove factual dependency in order to qualify as "wholly" dependent under G.S. § 97-38). Within G.S. § 97-2(12) the term "child" is defined to include a natural, adopted, illegitimate, married children and a stepchild. Except for natural children, each subgroup defined as a child is limited in some fashion; adoption must be completed before the injury proximately causing death, illegitimate children must be acknowledged and dependent, and married children must be "wholly dependent" on the deceased. A

fair reading of these provisions reveals the General Assembly's intent to afford the conclusive presumption of dependency to those persons who would most usually be factually dependent upon the deceased thereby alleviating the burdensome requirement of proof of dependency in every case. Mandating a conclusive presumption often effectuates the Act's goal of swift and certain award of benefits.

Melanie Winstead contends that the term "dependent" in G.S. § 97-2(12) which qualifies the words "stepchild" and "illegitimate" must be interpreted as legal, not factual, dependency *citing Hewett v. Garrett, supra; Lippard v. Express Co.*, 207 N.C. 507, 177 S.E. 801 (1935). The *Lippard* court considered the award of benefits to a deceased worker's acknowledged illegitimate child born posthumously. The court held that in the context of illegitimate children "dependent" must be interpreted as legal not factual dependency stating:

> The dependency with the statute recognizes as the basis of the right of the child to compensation grows out of the relationship, which in itself imposes upon the father the duty to support the child, and confers upon the child the right to support by its father. The status of the child, social or legal, is immaterial.
>
> The philosophy of the common law, which denied an illegitimate child any rights, legal or social, as against its father, and imposed no duty upon the father with respect to the child, is discarded by the statute.

*Lippard v. Express Co., supra*. Melanie Winstead contends that because a stepparent is not legally obligated to support a stepchild, *e.g. In re Dunston*, 18 N.C. App. 647, 197 S.E. 2d 560 (1973), a stepchild can receive death benefits under the conclusive presumption of G.S. § 97-38 only if the stepchild can show legal dependency. The argument fails under its own logic. As a stepchild has no legal right of support from a stepparent, we can envision no practical set of circumstances under which a stepchild could be legally dependent upon the stepparent short of legal adoption.

Chad and Ronald Brewer argue that the term "stepchild" is not qualified by the statutory language "dependent upon the

deceased." To adopt this argument would result in every stepchild qualifying for the conclusive presumption of G.S. § 97-39 and for death benefits in every such case. Chad and Ronald Brewer rely on *Chinault v. Pike Electrical Contractors*, 53 N.C. App. 604, 281 S.E. 2d 460 (1981), *affirmed*, 306 N.C. 286, 293 S.E. 2d 147 (1982) in which this court considered apportionment of death benefits among certain family members of a deceased employee, including one stepchild. The Industrial Commission awarded the stepchild an equal share of death benefits. The award of benefits to the stepchild was not in issue in that case, however, the issue being the amount and duration of benefit payments for each claimant. We have carefully reviewed the Industrial Commission's order and award in that case to determine the basis of its award to the stepchild because of its possible precedential value under *Deese*. In *Chinault*, the Commission found as fact that the stepchild was "wholly" dependent upon the deceased. In its conclusion of law awarding benefits to the stepchild, the Commission listed the widow, two children born of the marriage and the stepchild and stated that the claimants "were actually and/or presumptively wholly dependent upon decedent for support and are entitled to the entire death benefit. . . ." Because the Commission aggregated all claimants in one conclusion of law and the award to the stepchild was not apparently in issue before the Commission, we are unable to determine the interpretation of the Act on which it based its award to the minor stepchild and decline to accord that case the precedential value contended for by Chad and Ronald Brewer.

Grammatically, the phrase "stepchild or acknowledged illegitimate child dependent upon the deceased," is set off within the sentence by commas, and we believe that in order to give meaning to the wording of the statute and to effectuate the purpose of the Workers' Compensation Act to provide benefits to those individuals who have relied upon the deceased for financial support as *Deese* requires, a "stepchild" must be factually "dependent" upon the deceased employee.

Having held that stepchildren must be factually dependent upon the deceased employee, the remaining question we must resolve is the degree of dependency required. We hold that the test to be applied is "substantial" dependency upon the deceased employee. This result is derived from the wording of the various

dependency tests employed by the Act. As previously noted, the Act requires certain individuals not within the presumptive classifications to be "wholly" dependent, as defined by *Thomas*. Even if within the presumptive classifications, G.S. § 97-2(12) requires that married children must be "wholly" dependent. The term "wholly dependent," therefore, is a term of art as employed by the General Assembly, and it chose not to qualify the definition of stepchild with that term, electing to limit "stepchild" only by the word "dependent." On the opposite end of the spectrum, to hold that any economic dependency would qualify a stepchild for death benefits would not further the purpose of G.S. § 97-38 to first afford benefits to those persons who have relied on the deceased employee for support. Employing a "substantial" dependency test most closely accomplishes the purpose of the Act. We do not purport to establish a minimum percentage or to require mathematical certainty to determine substantial dependency of a stepchild. The substantial dependency standard is a question of fact to be determined under the facts of each case, the burden of proof being on the stepchild under the evidentiary standards normally employed in workers' compensation cases. The factors to be considered are the actual amount and consistency of the support derived by the stepchild from (1) the deceased stepparent, (2) the natural parent married to the stepparent, (3) the estranged natural parent, whether such support is voluntary or required by law, (4) the income of the stepchild, and (5) any other funds regularly received for the support of the stepchild. As in *Thomas*, we hold that *de minimis* amounts irregularly received and used in support of the stepchild must be excluded from the computation. The ultimate fact to be determined is whether the stepchild was substantially dependent on the financial support of the deceased stepparent as compared with all other sources of financial support available to maintain his accustomed standard of living.

In the case before us, the Commission's order contained detailed unchallenged findings of fact as to Chad and Ronald Brewer's standard of living and sources of support. In reaching its conclusions of law, however, the Full Commission assumed that the relationship of stepparent and stepchild, standing alone, was sufficient to award the stepchildren death benefits. This conclusion of law is erroneous based on our holding in this case. We affirm the Full Commission's award of benefits to the stepchil-

dren, however, as the record before us establishes that deceased's stepchildren were substantially dependent on him for support. The Commission's findings establish that in 1981 annualized expenses for the stepchildren were $7,857.60 (calculated by taking total family living expenses and dividing by two-fifths), the estranged natural father voluntarily contributed $1,200 to their support, the deceased had a gross income of $17,832, and the deceased's wife had a gross income of $6,652. From these findings of fact, we calculate that the deceased stepparent contributed approximately sixty-nine percent of the stepchildren's support during that portion of the year in which the parties were married (calculated by determining the percentage of deceased's income from total contributions from deceased, estranged parent, and deceased's wife who is the childrens' natural parent). In 1982, the deceased's gross income was $20,748, the deceased's wife earned $2,781, and the estranged parent contributed approximately $1,200. Based on the same formula used above, the deceased contributed approximately eighty-four percent of the stepchildren's support. These facts are sufficient to establish "substantial" dependency for the purpose of G.S. § 97-2(12), qualifying the stepchildren as a "child" dependent on deceased under G.S. § 97-39 and, therefore, entitled to a share of death benefits under G.S. § 97-38.

[2]   Finally, Melanie Winstead contends that allowing non-legally dependent stepchildren to recover under the Act would violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and its counterpart in the fundamental law of the Constitution of North Carolina. Winstead's argument is based on the potential "double recovery" by stepchildren which natural children could not receive. Under our holding, a stepchild could receive death benefits from the stepparent based on substantial factual dependency and from the estranged natural parent under the conclusive presumption of total dependency for a natural child. Two jurisdictions have directly considered this question and have held awards to stepchildren constitutional. *Flint Ave. Mills v. Henry*, 239 Ga. 347, 236 S.E. 2d 583 (1977), *appeal dismissed*, 434 U.S. 1003 (1978); *Shahan v. Beasley Hot Shot Service, Inc.*, 91 N.M. 462, 575 P. 2d 1347 (1978). We are persuaded that these decisions are sound. The result we have reached does not violate the Equal Protection

Clause of the Fourteenth Amendment of the Constitution of the United States or the fundamental law of North Carolina.

For the reasons stated herein the decision of the Industrial Commission awarding benefits to deceased's minor stepchildren is

Affirmed.

Judges ARNOLD and EAGLES concur.