A child of a deceased employee who, at the time of the death, is under 18 years of age is conclusively presumed to be dependent, and is entitled to receive benefits for the longer of 400 weeks or until attaining majority. Their rights become fixed at the date of death, and their right to share in the compensation does not end if they attain their majority during the 400 weeks. N.C.G.S. §§ 97-2 (12), 97-38 and 97-39; Allen v. Piedmont TransportServices, Inc. of North Carolina, 116 N.C. App. 234,447 S.E.2d 835 (1994).
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with MODIFICATION by addition of Stipulation 3, Findings of Fact 14 and 15, Conclusion of Law 7 and Award paragraphs 2 and 3, as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the call of this case for hearing, the parties entered into written stipulations which appear in the Commission file.
2. That the only issue to be determined at this hearing is:
 a. Is Beth Ann Solomon, step-daughter of the decedent, a dependant as contemplated by the North Carolina Workers' Compensation Act and entitled to share in the death benefits under the provisions of the said Act.
3. At the time of his death, plaintiff's decedent earned an average weekly wage of $818.58.
* * * * * * * * * * *
FINDINGS OF FACT
1. Prior to May 27, 1988, the decedent was married to Rhonda Culp Sessoms, by whom he had two children — Jamie L. Walters, born January 19, 1981 and Paul C. Walters born January 23, 1979, for whom she appears as Guardian Ad Litem in this case — and from whom he later became divorced on August 18, 1986.
2. On May 27, 1988, the decedent married Arlene S. Walters — who had a daughter by a former marriage, Beth Ann Solomon, born August 3, 1976, the party whose interest is being considered in this case, hereinafter referred to as Beth — to whom he was married at the time of his death and is the decedent's surviving widow.
3. Following the marriage on May 27, 1988, Beth came to live with her mother and her new step-father at the home provided by the decedent-stepfather and later at a home purchased by the decedent and Beth's mother.
4. In March of 1991, Beth left the residence of the decedent and her mother and went to live with her natural father in Ohio, where she remained until about January 1, 1992, when she returned to the home of her mother and the decedent-stepfather.
5. Being a disturbed child with behavioral problems, she was placed in Duke Hospital psychiatric unit on February 26, 1992. She remained hospitalized until about March 30, 1992, when she was released and, by Court Order, remanded into the custody of the Department of Social Services and placed in a foster home until June of 1992. She thereafter resided at places known to the Department of Social Services, but not to the decedent and her mother, until March 9, 1993, the date of decedent's death, when she returned to live with her mother at the residence where her mother and the decedent had been living.
6. During the periods involved in this proceeding:
 a. Beth was receiving Social Security benefits in the amount of $407.00 from the Social Security Administration as a dependent of her natural father who was qualified for Social Security disability benefits.
 b. The decedent was paying to his former wife child support for their two minor children in the amount of $240.00 per month.
 c. The decedent was paying approximately $15.00 per month as his share of the premium for health and hospitalization insurance in connection with his employment which afforded coverage to his two natural children and Beth.
d. Beth earned approximately $1,976.00 in 1992.
 e. From January 1992 until his death, the decedent earned approximately $36,400.00, and Beth's mother earned approximately $29,142.00 during this period.
7. During the period from March of 1991 to January 1, 1992, Beth was supported by her natural father.
8. During the period January 1, 1992 to February 26, 1992, Beth was residing in the home of the decedent and her mother and receiving the support afforded thereby as a member of the house-hold, although she attempted to run away due to her behavioral aberrations.
9. Subsequent to February 26, 1992, Beth resided either at the hospital, a foster home, or addresses unknown to the decedent and his wife, and outside the home environment provided by said decedent and his wife, and with the support and care provided by those establishments.
10. The hospital expense generated during Beth's stay from February 26 to March 30 of 1992, in the approximate sum of $28,000.00, was primarily paid for by the health and hospital insurance provided by the decedent's employment of which the employer paid $30.00 of the monthly premium of $45.00 from Beth's earnings and the joint checking account of the decedent and his wife.
11. While Beth was in the foster home from March 30, 1992 until June of 1992, the Department of Social Services, which had custody of Beth, was receiving a Social Security check of $407.00 as her natural father's dependent, and some medical expenses in the sum of approximately $75.00 per month and other incidental expenses from Beth's mother.
12. Subsequent to March of 1992, the Department of Social Services continued to receive the Social Security check of $407.00, and Beth's mother continued to pay some incidental expenses.
13. Prior to his death on March 9, 1993, the decedent had no communication or conversation with Beth for approximately a year and was not providing any financial support or otherwise to her at the time of his death.
14. Jamie L. Walters, born January 19, 1981, and Paul C. Walters, born January 23, 1979, are children of the deceased Richie Lee Walters, and were under 18 at the time of decedent's death by accident arising out of and in the course of his employment with defendant on March 9, 1993.
15. The wholly dependent plaintiff's are entitled to compensation at the rate of $545.73 per week.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. In the case of a step-child, it is not presumed as a matter of law that she or he is a dependent of the step-father under the provisions of the North Carolina Workers' Compensation Act as interpreted by the North Carolina Court of Appeals in Winstead v.Derreberry, 73 N.C. App. 35 (1985).
2. The ability of the step-father at the time of his death to provide substantial support to the step-daughter, Beth, is not tantamount to the fact of providing such substantial support rendering step-child substantially dependent upon said step-parent.
3. Although Beth was the step-daughter of the decedent at the time of his death, he was not at that time, nor had he been for three months prior thereto, contributing substantially to her support and maintenance.
4. The step-child, Beth, was not a dependent of the decedent at the time of his death so as to participate in death benefits under the provisions of the North Carolina Workers' Compensation Act.
5. The claimant, Beth Solomon, has failed to carry the burden of proof to establish her claim for death benefits as a step-child under the provisions of the North Carolina Workers' Compensation Act.
6. The claimant, Beth Solomon, is entitled to recover nothing by reason of her claim for death benefits under said Act.
7. Jamie L. Walters and Paul C. Walters, were wholly dependent upon the decedent at the time of his death, as was the widow Arlene S. Walters, and all are entitled to share in equal shares in the weekly payments of compensation due by reason of his death for 400 weeks. N.C.G.S § 97-38.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The claimant's claim for a death benefits as a dependent step-child of the decedent step-father under the provisions of the North Carolina Workers' Compensation Act is denied and dismissed.
2. Considering the reasonableness of the time expended, the services provided, and the complexity of the issues involved, reasonable attorney fees in the amount of $3,334.35 are hereby approved for Mr. Bobbie L. Bollinger, Jr., counsel for widow Arlene S. Walters. The next $3,334.35 due Mrs. Walters shall be deducted from the amount of the approved compensation benefits payable to Arlene S. Walters and forwarded directly to said counsel.
3. Jamie L. Walters, Paul C. Walters, and Arlene S. Walters shall continue to share in the weekly payments of $545.73 in equal shares for the duration of the 400 weeks of death benefits.
4. Each party shall bear its own costs.
 S/ ________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________ COY M. VANCE COMMISSIONER
S/ _________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/24/95