In accordance with the directives of the North Carolina Court of Appeals, the undersigned find as facts and conclude as matters of law the following, which were entered into by the parties in the Form 21 Agreement for Compensation, approved by the Commission on March 13, 1992, and at the initial hearing as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act, and the employer-employee relationship existed between the parties on January 15, 1992.
2. Defendant is a duly qualified self-insured with Consolidated Risk Management Services as the administering agent on the risk.
3. On January 15, 1992, the plaintiff sustained a compensable injury to her left knee.
4. The plaintiffs average weekly wage was $252.80, which yields a weekly compensation rate of $168.54.
5. The plaintiff received weekly total disability compensation payments from February 19, 1992, through the date of the initial hearing, and continuing to the time that the original opinion and award was entered by the deputy commissioner.
6. The issues for determination are:
(a) What is the nature and extent of plaintiffs disability?
(b) Should treatment by Dr. Walton Curl be authorized?
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible, and convincing evidence of record, the undersigned make the following additional:
 FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a 40 year old, tenth grade educated female who had been employed in September of 1989 as a rough end worker. On January 15, 1992, the plaintiff sustained a compensable injury when she tripped and fell, landing on both knees.
2. After the plaintiffs knees did not improve, she went out of work on February 19, 1992, and she began treatment with orthopedic surgeon Dr. Stephen C. Fleming on February 16, 1992, for complaints of left knee pain. On March 26, 1992, Dr. Fleming excised a loose body and fibrotic fat pad from plaintiffs left knee. Physical therapy was ordered for the left knee.
3. On March 20, 1992, plaintiff reported to Dr. Fleming that her right knee was fine.
4. On May 11, 1992, the plaintiff was seen by Dr. H. Grey Winfield, III, for a second opinion, at which time Dr. Winfield noted that plaintiffs complaints of left knee pain were not present when she was distracted.
5. Dr. Fleming referred the plaintiff to the Work Recovery Center, where she was seen on June 29, 1992, by Dr. Andrea Stutesman. Dr. Stutesman noted that plaintiff had normal range of motion in both knees and no swelling or discoloration in either knee. Plaintiff voiced subjective complaints of pain only regarding the left knee.
6. The plaintiff is refused to cooperate with physical therapists at the Work Recovery Center, leaving early every session. She refused to participate in exercises to strengthen the upper body. The plaintiff was; further uncooperative in that she alleged sitting was too painful, yet she admitted to sitting at the edge of the pool each evening to cool her legs. She was noted to exhibit an abnormal gait that required her to bend her left knee, and she sat in awkward positions which put greater stress on her left knee. These actions were inconsistent with her subjective complaints of pain.
7. On July 16, 1992, Dr. Fleming noted that plaintiffs complaints of left knee pain were out of proportion to the physical findings. No complaints were made by plaintiff regarding her right knee.
8. Due to plaintiffs continued subjective complaints, both orthopedic surgeons, Dr. Alfred Moretz and Dr. Stutesman recommended a lumbar sympathetic block, which plaintiff refused.
9. The plaintiff refused to attend an April 8, 1993 appointment with Dr. Stutesman, and thereafter on April 16, 1993, the Commission ordered the plaintiff to attend a functional capacities evaluation at the Work Recovery Center and to comply with the vocational specialist.
10. The plaintiff attended the functional capacity evaluation but refused to cooperate, rendering the results invalid.
11. On May 24, 1993, then Chief Deputy Commissioner Dianne C. Sellers ordered plaintiff to fully cooperate with therapists, due to the noncompliance with the Commissions Order of April 16, 1993.
12. On June 8, 1993, the plaintiff was seen by Dr. Stutesman, where complaints of left knee pain were not present when plaintiff was distracted and where plaintiff exhibited an inconsistent range of motion and symptom magnification.
13. On August 10, 1993, the plaintiff began treating with orthopedic surgeon Dr. Walton Curl. This treatment was not authorized by the defendant and was not authorized by the Industrial Commission except for a one-time visit.
14. Dr. Fleming, Dr. Stutesman, and Dr. Curl have opined that plaintiff is capable of performing some range of sedentary work with restrictions, which include a permanent four (4) hour per day restriction, recommended self pacing, no bending, no stooping, no climbing, and no kneeling. Specifically, her doctor advised against a work-hardening program in his office note of June 7, 1993.
15. Dave Toney, a vocational counselor retained by defendant, attempted to identify work available within plaintiffs restrictions. These jobs included two telemarketing jobs, a movie cinema, Dominos Pizza, Pizza Hut, and McDonalds. The plaintiff was offered a job at Dominos, which, according to worked up job description was to hue four hours. However, the record is devoid of any convincing evidence as to its actual hours/terms. Plaintiff failed to follow up on the interviews for the other jobs.
16. The plaintiff was terminated from Dominos after her first day on February 3, 1994. The undersigned, however, are unable to determine from the record at hand the specific reason for her termination. The only statement present was the hearsay, second hand account through Dave Toney, which cannot be accepted as either credible or convincing by the undersigned. Neither plaintiff nor the potential employers at Dominos testified as to what transpired.
17. Randy Adams, a vocational counselor hired by plaintiff, testified that plaintiff would be disadvantaged in competing against non-disabled applicants for work. However, there is no credible or convincing medical evidence in the record to establish that plaintiff is permanently and totally disabled. As Mr. Adams opinion is based upon the presumption that plaintiff is permanently and totally disabled, his opinions are not accepted as credible or convincing.
18. Dr. Curl has opined that plaintiff had reached maximum medical improvement as of January 4, 1993 and that she retains a 20% permanent impairment to her left leg. Dr. Curls rating to plaintiffs right leg is not accepted or credible or convincing for reasons stated herein above.
19. Plaintiff had not returned to work as of the date of the close of the record in this case with the exception of what may have transpired on one day at Dominos Pizza.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. As a result of the compensable injury, the plaintiff retains a 20% permanent partial disability to her left leg, for which she is entitled to 40 weeks of compensation should she choose to elect to receive this benefit. N.C.G.S. 97-31(15).
2. The plaintiff reached maximum medical improvement as of January 4, 1993 and is entitled to temporary total disability compensation up until the healing period ended as of that date. Carpenter v. Industrial Piping Co., 73 N.C. App. 39, 326 S.E.2d 328 (1985).
3. The plaintiff refused to cooperate with certain approved physicians, physical therapists and vocational counselors from a period of January 4, 1993 through May 23, 1993. Therefore, any weekly benefits to which plaintiff may have been entitled during this period of time are suspended. N.C.G.S. 97-25. Further, plaintiff was only marginally cooperative with vocational expert Dave Toney.
4. This case contains an approved Form 21 agreement, and therefore the presumption of plaintiffs continuing total disability arises and continues unless defendant meets its burden of successfully rebutting the presumption. Kisiah v. W.R. Kisiah Plumbing, Inc.,124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev. dend,345 N.C. 343 (1997).
5. In the case at hand, defendant has successfully rebutted the presumption of total disability to the extent that the competent, credible, and convincing evidence of record is that plaintiff is not permanently and totally disabled and retains some earning capacity. N.C.G.S. 97-29. However, the presumption continued partial disability to the extent that plaintiffs wage-earning capacity has been reduced has not successfully rebutted by defendant in that it has not been able to successfully show by the competent, credible, or convincing evidence that a job, even at reduced earnings actually exists within plaintiffs permanent restrictions and that the plaintiff is capable of obtaining such a job. N.C.G.S. 97-30; Kisiah, Id. However, it must be noted that plaintiff, for the period of time noted above, impeded defendants ability to rebut the presumption in that all of the competent and convincing medical evidence establishes that the plaintiff has exaggerated complaints, has refused treatment, and has refused to cooperate with functional evaluations even after being ordered to comply on two occasions by then Chief Deputy Commissioner Sellers.
6. Plaintiff is, therefore, entitled to the election of her most favorable remedy between her permanent partial disability rating and partial disability indemnity under N.C.G.S. 97-30 due to her reduced wage earning capacity. As over 300 weeks have passed since the initial date of plaintiffs injury, it should be easy for plaintiff to determine and select her most favorable remedy and to notify defendant and the Commission of her election at the earliest possible convenience.
7. Dr. Curls treatment did not provide relief, effect a cure, or lessen the period of disability as plaintiff admits that she received no relief, cure, or lessening of disability from his treatment. Furthermore, the plaintiff did not request authorization to seek treatment by Dr. Curl from either the defendant or the Commission. Therefore, the defendant is not liable for this unauthorized treatment beyond the first visit.
8. Plaintiff is entitled to such future medical treatment as may reasonably be required to effect a cure, give relief, or lessen her period of disability.
 ***********
Therefore, in accordance with the directives of the North Carolina Court of Appeals, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
 AWARD
1. Defendant shall pay plaintiff, at her election, either for her 20% permanent partial disability rating to her left leg or for her partial disability pursuant to N.C.G.S. 97-30, whichever is the more favorable remedy. Plaintiff shall notify the undersigned and the defendant of her election at the earliest possible convenience. Should N.C.G.S. 97-30 benefits be elected, plaintiff shall provide to defendant and the undersigned an affidavit and report of the actual weekly earnings of the plaintiff during the period of time in question, and the parties shall. attempt to stipulate to the amounts due and payable, noting that plaintiffs earning capacity may have been $0.00 for some weeks in question, possibly resulting in payment of the full compensation rate for those weeks. Should the parties be unable to do so, they shall notify the Commission immediately.
2. Defendant shall pay future medical expenses as plaintiff may incur as a result of- her compensable injuries, provided such treatment is reasonably necessary to effect a cure, give relief, or lessen her period of disability, when bills for the same have been submitted to the Industrial Commission for approval.
3. A reasonable attorneys fee of 25% is approved from the lump sum of accrued compensation clue plaintiff and is authorized to be paid directly to counsel.
4. Defendant shall pay the costs, including an expert witness fee of $180.00 to Dr. Stutesman and $220.00 to Dr. Curl.
IT IS FURTHER ORDERED that this case be removed from the Full Commission hearing docket.
This the 8th day of December, 1998.
 S/_______________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
JHB/kws