The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses that portion of the deputy commissioner's Opinion and Award which denied benefits to Scott and Wayne Blanton.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing 18 November 1997 as:
 STIPULATIONS
1. On or about 16 July 1996, defendant-employer regularly employed three or more employees. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and of the subject matter.
2. Scott Leach was injured by accident on 16 July 1996, which accident arose out of and in the course of his employment with defendant-employer, resulting in his death on 18 July 1996.
3. At the time of injury Scott Leach's average weekly wage was $471.87 and his compensation rate was $314.60.
4. Laurie Leach was married to Scott Leach on 15 January 1996, and she is his lawful widow. The parties further have stipulated that Laurie Leach is entitled to at least a one-sixth (1/6) share.
5. Laurie Leach had two minor children, Erica Marie Helsel, born 23 June 1984, and Donald Allen Helsel, III, born 7 October 1986, by a previous marriage, both under eighteen years of age at the time of Scott Leach's death, and who also lived with Scott Leach and Laurie Leach. John Dale Leach, also a minor at the time of Scott Leach's death, has always been wholly dependent upon Scott Leach for his maintenance and support.
6. Diana Keifer met Scott Leach during the summer of 1988 in Marion county, Ohio. Later that year, Scott Leach returned to North Carolina.
7. On 8 May 1989, Diana Keifer gave birth to twin sons, Wayne and Scott Christopher Blanton. Wayne and Scott Christopher Blanton were under the age of eighteen at the time of Scott Leach's death.
8. Defendant-carrier has paid Laurie Leach benefits in the amount of $52.43 per week (calculated as 1/6 of decedent's compensation rate under G.S. § 97-38) since the date of decedent's death. Once the entire beneficiary pool has been finally determined, defendants shall be entitled to an offset for benefits paid to Laurie Leach. Defendant-carrier has agreed to effectuate a reapportionment of the full award payable to Laurie Leach should the number of dependents making up the beneficiary pool be determined to be less than six.
9. Diana Keifer, Guardian Ad Litem for Scott C. Blanton and Wayne Blanton, was not required to attend the hearing before Deputy Commissioner Hoag on 18 November 1997.
10. The following documents were stipulated to and tendered by the parties:
 a. Affidavit and Summary of Income and Expenditures with attachments (25 pp.)
b. Family pictures (10 pp.)
 c. Divorce Decree of Laurie Helsel and Donald Allen Helsel, dated 9 September 1991.
d. Birth Certificate of John Dale Leach, 12 April 1990.
 e. Support materials on behalf of Wayne and Scott C. Blanton (44 pp.)
 f. Materials from case file regarding William Landrum and Scottie Christopher Leach, Juvenile Court of Marion County, Ohio; Court of Common Pleas complaint to establish parentage (79 pp.)
 g. Delinquency charges, Craven County Clerk of Superior Court (12 pp.)
11. The issues to be resolved are:
 a. Are Scott C. and Wayne Blanton the acknowledged illegitimate children of deceased within the meaning of G.S. § 97-2(12)?
 b. Were Erica Marie Helsel and Donald Allen Helsel, III, substantially dependent upon the financial support of decedent as compared to all other sources of financial support available to maintain their accustomed standard of living?
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over the parties and the subject matter.
2. On 16 July 1996, Scott Leach (hereinafter, "decedent"), age 26, sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in his death on 18 July 1996.
3. At all relevant times, Employers Mutual Casualty was the carrier on the risk.
4. Laurie B. Leach lived with decedent continuously from the date of her marriage to him on 15 January 1996, until the date of the accident.
5. Before she was married to decedent, Laurie Leach was married to Donald Allen Helsel, Jr. They lived together from 16 September 1983 until 16 January 1989, at which time they separated from one another on a permanent basis. They were later divorced on 4 November 1991.
6. Laurie Leach met decedent on 16 January 1989 and began living with him in March 1989. Laurie Leach gave birth to John Dale Leach on 12 April 1990.
7. Decedent was present at the hospital when John Dale Leach was born. He participated in the naming of the child after his father. Decedent later legitimated the child by marrying Laurie Leach. John Dale Leach was claimed as a dependent on decedent's income tax returns. Decedent raised the child in his home from birth until the date of the accident, during which time he participated in every aspect of the child's life.
8. Erica Marie Helsel and Donald Allen Helsel, III (hereafter "Helsel stepchildren") were born during Laurie Leach's marriage to Donald Helsel, Jr. Laurie Leach retained custody of the Helsel stepchildren upon her separation and later divorce from Donald Helsel, Jr.
9. The Helsel stepchildren lived with decedent and Laurie Leach continuously from March 1989 until the date of the accident, or approximately seven years. During this time, the Helsel stepchildren came to view decedent as their father and referred to him as such. Decedent treated the Helsel stepchildren equal in every respect to his own son, John Dale Leach. The photographs introduced into evidence demonstrate that decedent participated fully in his stepchildren's lives.
10. For approximately a three-month period before decedent's accident, the average gross monthly income for his and Laurie Leach's five-person household, consisting of decedent, Laurie Leach, John Dale Leach, Donald Allen Helsel, III, and Erica Marie Helsel was as follows:
 Scott Leach $2,044.77 Laurie Leach 505.33 Child support from Donald Helsel, Jr. 378.17 Income of Helsel stepchildren 0.00 Any other funds regularly received 0.00 _________ TOTAL $2,928.27
11. For approximately a three-month period before decedent's accident, the average monthly shared and fixed expenses for this five person household included the following:
 Payment under contract to purchase lot and mobile home $400.00 Homeowner's insurance 37.25 Electricity 129.12 Telephone 81.39 Cable 45.10 Food and home supplies 281.48 Food away from home 45.62 Car payment 280.00 Gas 86.66 Car repairs/maintenance 5.00 Car insurance 77.61 License plates/inspection fees 3.25 Pet expenses 35.60 Life insurance 20.98 Loan payment 88.00 Family entertainment 34.31 Miscellaneous 83.33 _________ TOTAL $1,734.70
12. In addition, for approximately a three-month period before decedent's accident, the average monthly financial expenditures directly attributable solely to the support of the Helsel stepchildren were as follows:
 School supplies $ 10.06 Clothing 50.00 Baby-sitter 8.33 Recreation/entertainment 6.25 Gifts 100.00 Life insurance 3.47 Books 15.29 Miscellaneous 41.66 ________ TOTAL $ 235.06
13. Monthly expenses for the Helsel stepchildren totaled $928.94, as calculated by adding the Helsel stepchildren's portion of the fixed and shared family expenses (2/5ths of $1,734.70 = $693.88) to the expenses directly attributable solely to the Helsel stepchildren ($235.06).
14. By court order, Donald Helsel, Jr., was obligated to pay child support for the use and benefit of the Helsel stepchildren in the amount of $436.00 per month. During the three-month period before decedent's accident, Donald Helsel, Jr., contributed only $378.17, which was 40.7% of their support.
15. Laurie Leach, had a gross monthly income of $505.33. For the Helsel stepchildren, two-fifths (2/5) of that amount equals $202.13, or 21.8% of their support.
16. The natural parents, Donald Helsel, Jr., and Laurie Leach, provided $580.30, or 62.5% of the support for Erica Marie Helsel and Donald Allen Helsel, III. Decedent provided $348.64 or 37.5% of the support for the Helsel stepchildren.
17. The Helsel stepchildren, Erica Marie Helsel and Donald Allen Helsel, III, were substantially dependent upon decedent for their support at the time of his death. Upon decedent's death, the Helsel stepchildren were no longer able to maintain their accustomed standard of living.
18. Decedent met Diana Keifer in Ohio during the summer of 1988, after which he returned to North Carolina. Decedent fathered twin sons with Ms. Keifer, Scott C. Blanton and Wayne Blanton, who were born on 8 May 1989.
19. After decedent returned to North Carolina, he and Diana Keifer spoke by telephone during her pregnancy. At decedent's request, Diana Keifer named Scott C. Blanton after decedent. Wayne Blanton was named after Diana Keifer's father. Their last name of Blanton is Diana Keifer's maiden name.
20. On 27 June 1989, Diana Keifer filed a lawsuit in the Juvenile Court of Marion County, Ohio, against the decedent and William Landrum, to determine the paternity of the Blanton children. In the complaint, Diana Keifer asserted that William Landrum was not the biological father of the Blanton twins. Blood specimens taken from the decedent, Diana Keifer, Wayne Blanton and Scott Blanton determined that the relative chance of decedent being the biological father of the twins was 98.6%.
21. Decedent was the biological father of Scott and Wayne Blanton.
22. After Diana Keifer filed the paternity suit, decedent agreed that he was the father of the Blanton twins, and he further agreed to make child support payments for the use and benefit of the twins. The Ohio court adopted these agreements in a valid Judgment entered on 3 April 1990. Decedent was represented by counsel, who signed the Judgment in these proceedings on decedent's behalf. Decedent chose not to appear in court or to contest the paternity.
23. Decedent became in arrears on the court-ordered support. Diana Keifer brought a URESA child support enforcement action in Craven County, North Carolina, in order to enforce decedent's child support obligations to the Blanton twins. Decedent appeared through counsel at hearings in this action. At the hearings, decedent did not attempt to attack the validity of the Ohio Judgment and did not deny that he was the father of the Blanton twins. The Ohio Judgment was held to be in full force and effect by an Order entered on 3 October 1994 in the URESA action. At the time of his death, decedent's child support obligation to the Blanton twins was in arrears.
24. After the filing of the URESA action, decedent, his wife, and his parents made sporadic child support payments for the use and benefit of the Blanton twins.
25. By his actions and statements, decedent acknowledged a parental relationship between himself and Scott and Wayne Blanton.
26. Scott Blanton and Wayne Blanton are the acknowledged illegitimate children of decedent and were legally dependent on decedent at the time of decedent's death.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Laurie B. Leach is the widow of decedent, is conclusively presumed have been wholly dependent upon him for support, and is entitled to a one-sixth (1/6) share of 400 weeks of compensation on account of decedent's death. G.S. 97-2(15), 97-38, 97-39.
2. John Dale Leach is a child of decedent, is conclusively presumed to have been wholly dependent upon him for support, and is entitled to receive one-sixth (1/6) of 400 weeks of compensation on account of decedent's death, and until he reaches the age of 18. G.S. 97-2(12), 97-38, 97-39.
3. Scott Christopher Blanton is an acknowledged illegitimate child dependent upon decedent and is entitled to receive one-sixth (1/6) of 400 weeks of compensation on account of decedent's death, and until he reaches the age of 18. G.S.97-2(12), 97-38, 97-39; Hewitt v. Garrett, 274 N.C. 356,163 S.E.2d 372 (1968).
4. Wayne Blanton is an acknowledged illegitimate child dependent upon decedent, and is entitled to receive one-sixth (1/6) of 400 weeks of compensation on account of decedent's death, and until he reaches the age of 18. G.S. 97-2(12), 97-38,97-39; Hewitt v. Garrett, 274 N.C. 356, 163 S.E.2d 372 (1968).
5. Erica Marie Helsel is a stepchild substantially dependent upon decedent for support at the time of his death, and is entitled to receive one-sixth (1/6) of 400 weeks of compensation on account of decedent's death, and until she reaches the age of 18. G.S. 97-2(12), 97-38, 97-39; Winstead v. Derreberry,73 N.C. App. 35, 326 S.E.2d 55 (1985).
6. Donald Allen Helsel, III, is a stepchild substantially dependent upon decedent for support at the time of his death, and is entitled to receive one-sixth (1/6) of 400 weeks of compensation on account of decedent's death, and until she reaches the age of 18. G.S. 97-2(12), 97-38, 97-39; Winstead v.Derreberry, 73 N.C. App. 35, 326 S.E.2d 55 (1985).
7. Defendants are obligated under the Act to pay for any medical expenses incurred by decedent. G.S. 97-25.
8. Defendants are obligated under the Act to pay burial expenses not exceeding $2,000. G.S. 97-38.
9. Plaintiffs are entitled to interest on the accrued portion of their respective awards. G.S. 97-86.2.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the Deputy Commissioner's holding and enters the following:
 AWARD
1. Defendants shall pay Laurie B. Leach one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, subject to credit to defendants for any sums previously paid. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
2. Defendants shall pay Laurie B. Leach, as natural guardian, for the use and benefit of John Dale Leach, one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, and until the minor child reaches the age of 18. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
3. Subject to the attorney's fee approved herein, defendants shall pay Laurie B. Leach, as natural guardian, for the use and benefit of Erica Marie Helsel, one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, and until the minor child reaches the age of 18. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
4. Subject to the attorney's fee approved herein, defendants shall pay Laurie Leach, as natural guardian, for the use and benefit of Donald Allen Helsel, III, one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, and until the minor child reaches the age of 18. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
5. Subject to the attorney's fee approved herein, defendants shall pay Diana Keifer and the law firm of Kemp, Schaffer, Rowe 
Lardiere Company, L.P.A., subject to deposit into a custodial account pursuant to Ohio law for the use and benefit of Scott Christopher Blanton, one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, and until the minor child reaches the age of 18. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
6. Subject to the attorney's fee approved herein, defendants shall pay Diana Keifer and the law firm of Kemp, Schaffer, Rowe 
Lardiere Company, L.P.A., subject to deposit into a custodial account pursuant to Ohio Law, for the use and benefit of Wayne Blanton, one-sixth (1/6) of $314.60 per week for a period of 400 weeks from the date of decedent's death, and until the minor child reaches the age of 18. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. 97-86.2.
7. Defendants shall pay any medical expenses incurred by reason of decedent's injury and resulting death, as such sums are approved by the Industrial Commission.
8. If not heretofore paid, defendants shall pay the person or entity entitled thereto the amount of burial expenses incurred as the result of decedent's death, but not exceeding $2,000.
9. An attorney's fee in the amount of 25% of the compensation awarded to Erica Marie Helsel and Donald Allen Helsel, III, is approved for their counsel. This fee shall be deducted from the accrued amount owed to these plaintiffs and paid directly to their counsel. Of the remaining compensation due, 25% shall be deducted from the weekly compensation and paid directly to their counsel. No attorney's fees shall be deducted from the amount awarded to Laurie B. Leach as widow or from the amount awarded for John Dale Leach.
10. An attorney's fee in the amount of 25% of the compensation awarded for Scott Christopher Blanton and Wayne Blanton is approved for their counsel. This fee shall be deducted from the accrued amount owed to these plaintiffs and paid directly to their counsel. Of the remaining compensation due, 25% shall be deducted from the weekly compensation and paid directly to their counsel.
11. Defendants shall pay the costs.
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER