***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission, and the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission modifies the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. This claim arises from an admittedly compensable injury resulting in death that Deceased-Plaintiff sustained on February 23, 2010 while working for Defendant-Employer.
2. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and the subject matter.
3. All parties have been correctly designated, and there is no question as to the misjoinder or nonjoinder of any parties.
4. Stonewood Insurance Company was the insurer on or about February 23, 2010.
5. Deceased-Plaintiff's average weekly wage was $401.43, yielding a compensation rate of $267.63.
6. At the hearing before the Deputy Commissioner, the parties stipulated that Deceased-Plaintiff's daughter, Katerine Nohelia Argueta Antunez, is a proper beneficiary in this claim in that she is conclusively presumed to have been wholly dependent on Deceased-Plaintiff.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits by the Deputy Commissioner:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Death certificate for Deceased Plaintiff
 • Exhibit 4: Medical records of Deceased Plaintiff *Page 3 
 • Exhibit 5: Birth certificate for Plaintiff's daughter
 • Exhibit 6: Discovery responses of Henry Jesus Zelaya Andrade and Shelby Gene Martin
 • Exhibit 7: Medical records of Plaintiff's father
 • Exhibit 8: Medical records of Plaintiff's mother
 • Exhibit 9: Western Union records
 • Exhibit 10: Photographs of Deceased Plaintiff's family
 • Exhibit 11: Funeral bill
 • Exhibit 12: Copy of Deceased Plaintiff's driver's license
 *********** EVIDENTIARY ISSUES
Following the Notice of Appeal to the Full Commission, Defendants filed a Motion to Take Additional Evidence and for Reconsideration. Defendants requested that the Opinion and Award reflect Defendants' payment of $3,500.00 in funeral expenses. The Full Commission, in its discretion, hereby GRANTS Defendants' motion.
Plaintiff Katerine Nohelia Argueta Antunez filed a Motion to Take Additional Evidence. Plaintiff Katerine Nohelia Argueta Antunez requested the Full Commission to admit into evidence a Western Union receipt dated February 21, 2008. The Full Commission, in its discretion, hereby GRANTS Plaintiff Katerine Nohelia Argueta Antunez's motion.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Deceased-Plaintiff (hereinafter "Plaintiff") was 28 at the time of his death on February 23, 2010, and was not married. He was a native and citizen of Honduras.
2. Plaintiff's father, Miguel Angel Argueta Pineda, is a mason by trade. He came to Wilmington, North Carolina in 2006 to work and send money home to his family in La Masica, Honduras.
3. Plaintiff's father had to leave the United States and return to Honduras in August 2007 because of declining health, specifically rheumatoid arthritis and Type II diabetes.
4. Being the most responsible of his father's sons, Plaintiff came to the United States in September 2007, essentially as a replacement for his father, to work and send money home to his family in Honduras.
5. Plaintiff came to Wilmington to live with his sister Cynthia and her husband Gene Martin. Plaintiff's sister and Martin had married after they met during a missionary trip that Martin took to Honduras in the 1990s. During his years in Honduras, Martin got to know Plaintiff's family well.
6. Following his arrival in Wilmington, Plaintiff began working as a welder. After earning enough money to get established, he began to send money home to his parents and his daughter in Honduras.
7. Plaintiff's daughter, Katarina Nohelia Argueta Antunez, is five years old, with a date of birth of March 5, 2006. As of the hearing, she resided in La Masica, Honduras with her natural mother, Belkis Diosana Antunez Zelaya.
8. Plaintiff spoke very little English and was functionally illiterate, so his sister and Martin, his brother-in-law had to help him with the paperwork involved with Western Union money transfers to Honduras. *Page 5 
9. Using Western Union, Plaintiff regularly sent money to his parents and his daughter. During the period from January 8, 2008, until his death, Plaintiff sent a total of $9,938 to his parents through Western Union. During that same period, Plaintiff sent a total of $1,130 to the mother of his daughter.
10. Plaintiff made regular payments of between $50 and $150 per week to his parents during the period from January 8, 2008, until his death.
11. The Western Union records typically showed Plaintiff's sister and/or brother-in-law as the transferors because of Plaintiff's reliance on them to help him with the paperwork, but it was Plaintiff's earnings that were sent.
12. Plaintiff's brother-in-law has operated a farm near where Plaintiff's family lives and he has employed workers at his farm and is familiar with the wages typically paid in Honduras. He testified that the total amount transferred by Plaintiff to his parents in the period of just over two years prior to Plaintiff's death was equivalent to the wages that Plaintiff's father would have earned over two years' time as a mason in Honduras. The undisputed testimony at hearing before the Deputy Commissioner was that $5,000 would be good annual earnings for a mason in Honduras, assuming work was available.
13. After Plaintiff's father returned to Honduras in 2007, jobs in his area became scarce even for able-bodied workers. As a mason suffering from rheumatoid arthritis and diabetes, Plaintiff's father has been unable to find a job in Honduras and has earned no income since returning there from the United States. Furthermore, Plaintiff's father was 54 years old at the time of the hearing before the Deputy Commission and has used crutches to ambulate since returning to Honduras from the United States. *Page 6 
14. Plaintiff's mother, Paola Ofelia Banegas Solis, also the same age as Plaintiff's father, has Type II diabetes and has not worked in years. Both of Plaintiff's parents are disabled, to some extent, from working. Honduras is a relatively impoverished country and has no social security system or any sort of public assistance for the disabled.
15. Plaintiff's mother and father remain married and living together in La Masica, Honduras. They, along with several other relatives, live in a small concrete block house with a tin roof that Plaintiff's father built himself.
16. Plaintiff's parents have no bank account.
17. During the time that Plaintiff was in the United States working, Plaintiff's parents had no other source of regular support beyond the payments that Plaintiff sent to them.
18. Plaintiff had two brothers and four sisters, but none of them provided regular support to Plaintiff's parents during the time that Plaintiff was in the United States.
19. Plaintiff's sister and brother-in-law incurred a funeral bill of $5,451.68 for Plaintiff's burial.
20. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff's daughter, Katerine Nohelia Argueta Antunez, was wholly dependant upon the earnings of Plaintiff at the time of his death by injury by accident on February 23, 2010. The Full Commission further finds that Plaintiff's daughter, Katerine Nohelia Argueta Antunez, is a minor and is dependant until the age of 18.
21. Based on the preponderance of the evidence of the record, the Full Commission finds that Plaintiff's parents, Miguel Angel Argueta Pineda and Paola Ofelia Banegas Solis, were wholly dependant upon the earnings of Plaintiff at the time of his death by injury by accident on February 23, 2010. *Page 7 
22. Based on the preponderance of the evidence of the record, the Full Commission finds that as a result of Plaintiff's death, the sister and brother-in-law are entitled to reimbursement of the funeral expenses up to $3,500.00. The Full Commission further finds that such payment has been made by Defendants.
23. The Full Commission finds that the parties have stipulated that Plaintiff's average weekly wage was $401.43, yielding a compensation rate of $267.63.
 ***********
Based upon the foregoing Stipulations, and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's parents, Miguel Angel Argueta Pineda and Paola Ofelia Banegas Solis, were wholly dependent on the earnings of Plaintiff for support at the time of his death by injury by accident on February 23, 2010, and thus they are entitled to share in the compensation payable for his death. N.C. Gen. Stat. §§ 97-38 and 97-39; Winstead v. Derreberry,73 N.C. App. 35 (1985).
2. Plaintiff's daughter, Katerine Nohelia Argueta Antunez, was wholly dependant on the earnings of Plaintiff for support at the time of his death by injury by accident on February 23, 2010, and thus she is entitled to share in the compensation payable for his death. N.C. Gen. Stat. § 97-39.
3. Plaintiff's parents, Miguel Angel Argueta Pineda and Paola Ofelia Banegas Solis, were wholly dependant upon the earnings of Plaintiff at the time of his death by injury by accident on February 23, 2010. N.C. Gen. Stat. § 97-39. *Page 8 
4. As Plaintiff's daughter, mother and father were all wholly dependent on Plaintiff for support at the time of his death, they are all entitled to receive the entire compensation payable, share and share alike. N.C. Gen. Stat. § 97-38(1).
5. Defendants should pay compensation payments to share and share alike among the persons wholly dependant for a period of 400 weeks from the date of death on February 23, 2010. N.C. Gen. Stat. § 97-38(1).
6. Defendants should pay entire compensation payments to the wholly dependant minor child until such child reaches the age of 18. N.C. Gen. Stat. § 97-38(3).
7. Plaintiff's sister and brother-in-law are entitled to recover burial expenses from Defendants in the amount of $3,500.00. N.C. Gen. Stat. § 97-40.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants SHALL pay $89.21 per week each to Miguel Angel Argueta Pineda, Paola Ofelia Banegas Solis and Katerine Nohelia Argueta Antunez for 400 weeks beginning on February 24, 2010. For the amounts accrued through the present, Defendants SHALL make lump sum payments to the beneficiaries, subject to pending fee awards for counsel.
2. Upon the expiration of 400 weeks from February 24, 2010, Defendants SHALL continue to pay $89.21 per week to Katerine Nohelia Argueta Antunez until the minor child reaches the age of 18. *Page 9 
3. For the payments to Plaintiff's minor daughter Katerine Nohelia Argueta Antunez, Defendants SHALL make said payments to her mother and natural guardian, Belkis Diosana Antunez Zelaya, to be used exclusively for Plaintiff's daughter's care and support.
4. Defendants SHALL pay $3,500.00 to Gene and Cynthia Martin for burial expenses.
5. Defendants shall pay the costs.
This the ___ day of August 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1