BRENDA H. DEESE, WIDOW; BRACY DEESE, GUARDIAN OF KATIE LYNN DEESE, STEPHEN HAYWOOD DEESE, AND CHRISTOPHER WAYNE DEESE, MINOR CHILDREN; BRACY DEESE, ADMINISTRATOR OF THE ESTATE OF CHARLES W. DEESE, DECEASED, EMPLOYEE, PLAINTIFFS v. SOUTHEASTERN LAWN AND TREE EXPERT COMPANY, EMPLOYER, FIDELITY AND CASUALTY COMPANY OF NEW YORK, CARRIER, DEFENDANTS

No. 16PA82

(Filed 13 July 1982)

**Master and Servant § 79— workers' compensation—determination of death benefits**

G.S. 97-38 does not require a *reapportionment* of the *entire* amount of payable death benefits among the *remaining* dependent children in equal shares as each child reaches the age of 18, *after* the expiration of the initial compensation period of 400 weeks. A careful reading of G.S. 97-38 convinces the Court that our legislature intended *to enlarge the period* during which a dependent child of a deceased employee may continue to receive *his or her fixed* share of benefits, beyond the normal cut-off of 400 weeks to the time the child attains majority, and it did not also intend to provide a means for increasing the amount of the dependent's individual share in conjunction with that special extension. ,

Justice MITCHELL dissenting.

Justices EXUM and CARLTON join in this dissenting opinion.

APPEAL by plaintiffs pursuant to G.S. 7A-31 for discretionary review of the decision of the Court of Appeals (*Judge Webb*, with *Judges Hedrick* and *Arnold* concurring) reported at 53 N.C. App. 607, 281 S.E. 2d 462 (1981). The Court of Appeals affirmed the opinion and award of the Industrial Commission entered on 15 August 1980 regarding the distribution of compensation benefits

to the widow and dependent minor children of the deceased employee.

This appeal arises from a proceeding held before the Industrial Commission to determine the amount and duration of death benefits payable to the dependent survivors of an employee under the Workers' Compensation Act. The essential facts underlying the resulting legal controversy are summarized in the Court of Appeals' opinion as follows:

> After a hearing, Commissioner Robert S. Brown found that on 28 October 1978, Charles W. Deese died as a result of an injury from an accident arising out of and in the course of his employment; that he had a wife and three minor children at the time of his death; that his weekly wages at the time of his death were $265.44; that the parties were subject to the Workers' Compensation Act; and that his widow and three minor children were entitled to total compensation of $176.97 per week. Commissioner Brown awarded compensation of $44.25 per week for 400 weeks to the decedent's widow and $44.25 per week to each of his minor children until he or she reached 18 years of age. Bracy Deese, guardian for the three minor children, appealed to the Full Commission which affirmed Commissioner Brown's award.

53 N.C. App. at 607-08, 281 S.E. 2d at 463.

On plaintiffs' further appeal, the Court of Appeals upheld the opinion and award of the Commission which, in pertinent part, stated that: "there is nothing in the statute [G.S. 97-38] which calls for there to be an increase or decrease in the weekly benefit rate based on an increase or decrease in the number of whole dependents." Record at 14. In our Court, plaintiffs argue again for an interpretation of G.S. 97-38 whereby compensation would be paid "following the initial 400 weeks, at the rate of $176.97 per week [the entire amount] for such additional time until such time as all of the minor children of the deceased shall have attained the age of 18 years . . . ." Plaintiffs' Brief at 6.

*Roberts, Cogburn & Williams, by James W. Williams and Isaac N. Northup, Jr., for plaintiff-appellants.*

*Vanwinkle, Buck, Wall, Starnes and Davis, by Phillip J. Smith, for defendant-appellees.*

COPELAND, Justice

In this appeal, we are called upon to review the opinion and award of the Industrial Commission for the existence of legal error (see G.S. 97-86) in that agency's interpretation and application of G.S. 97-38. The statute in question governs the payment and allocation of compensation benefits in cases where the employee has died as the result of a work-related injury. *See* G.S. 97-29. Put as simply as possible, the sole issue is whether G.S. 97-38 requires a *reapportionment* of the *entire* amount of payable death benefits among the *remaining* dependent children in equal shares as each child reaches the age of eighteen, *after* the expiration of the initial compensation period of 400 weeks.[1] A careful and common-sense reading of G.S. 97-38 convinces us that our legislature merely intended *to enlarge the period* during which a dependent child of a deceased employee may continue to receive *his or her fixed share* of benefits, beyond the normal cut-off of 400 weeks to the time the child attains majority, and it did not also intend to provide a means for increasing the amount of the dependent's individual share in conjunction with that special extension. We, therefore, affirm the decision of the Court of Appeals.

This Court has interpreted the statutory provisions of North Carolina's workers' compensation law on many occasions. In every instance, we have been wisely guided by several sound rules of statutory construction which bear repeating at the outset here. First, the Workers' Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976); *Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970). Second, such liberality should not, however, extend beyond the clearly expressed language of those provisions, and our courts may not enlarge the ordinary meaning of the terms used by the legislature or engage in any method of "judicial legislation." *Andrews v. Nu-Woods, Inc.*, 299 N.C. 723, 726, 264 S.E. 2d 99, 101 (1980) ("[j]udges must interpret and apply statutes as they are written"); *Davis v. Granite Corporation*, 259 N.C. 672,

---

1. The same issue is raised in another workers' compensation case decided by our Court today: *Chinault v. Pike Electrical Contractors*, 306 N.C. 286, 293 S.E. 2d 147 (1982).

675, 131 S.E. 2d 335, 337 (1963) (a statute must be interpreted according to its "definite and sensible" meaning); *Gilmore v. Board of Education,* 222 N.C. 358, 366, 23 S.E. 2d 292, 297 (1942) ("[i]t is ours to construe the laws and not to make them"). Third, it is not reasonable to assume that the legislature would leave an important matter regarding the administration of the Act open to inference or speculation; consequently, the judiciary should avoid "ingrafting upon a law something that has been omitted, which [it] believes ought to have been embraced." *Shealy v. Associated Transport,* 252 N.C. 738, 741, 114 S.E. 2d 702, 705 (1960); *Rice v. Panel Co.,* 199 N.C. 154, 157, 154 S.E. 69, 70 (1930). Fourth, in all cases of doubt, the intent of the legislature regarding the operation or application of a particular provision is to be discerned from a consideration of the Act as a whole — its language, purposes and spirit. *Stevenson v. City of Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972); *Morris v. Chevrolet Co.,* 217 N.C. 428, 8 S.E. 2d 484 (1940). Fifth, and finally, the Industrial Commission's legal interpretation of a particular provision is persuasive, although not binding, and should be accorded some weight on appeal and not idly cast aside, since that administrative body hears and decides all questions arising under the Act in the first instance. *Shealy v. Associated Transport, supra,* 252 N.C. at 742, 114 S.E. 2d at 705; *Rice v. Panel Co., supra; see Hanks v. Utilities Co.,* 210 N.C. 312, 186 S.E. 252 (1936). *See generally* G.S. 97-86, 97-91. With these principles firmly in mind, we proceed to examine the statute in issue.

In pertinent part, G.S. 97-38 states the following:

If death results proximately from the accident and within two years thereafter, or while total disability still continues and within six years after the accident, the employer shall pay or cause to be paid, subject to the provisions of other sections of this Article, weekly payments of compensation equal to sixty-six and two-thirds percent (66 2/3%) of the average weekly wages of the deceased employee at the time of the accident . . . to the person or persons entitled thereto as follows:

(1) Persons wholly dependent for support upon the earnings of the deceased employee at the time of the acci-

> dent shall be entitled to receive the entire compensa-
> tion payable share and share alike to the exclusion of
> all other persons. If there be only one person wholly
> dependent, then that person shall receive the entire
> compensation payable.
>
> . . . .
>
> . . . Compensation payments due on account of death shall be
> paid for a period of 400 weeks from the date of the death of
> the employee; provided, however, after said 400-week period
> in case of a widow or widower who is unable to support
> herself or himself because of physical or mental disability as
> of the date of death of the employee, compensation payments
> shall continue during her or his lifetime or until remarriage
> and compensation payments due a dependent child shall be
> continued until such child reaches the age of 18.

The thrust of plaintiffs' claim in this case is that the general pro-
vision in G.S. 97-38 for the continuation of "compensation
payments" to a disabled spouse or minor child beyond the
400-week period is amplified by the specific provision of subsec-
tion (1) for dependents of the deceased employee to receive "the
*entire* compensation payable" (emphasis added), and that, when
these provisions are properly read together, it is manifest that
the legislature intended for the total compensation award (66⅔%
of the deceased's average weekly wage) to be paid so long as
there are any beneficiaries eligible to take it. According to plain-
tiffs' theory of the statute then, when a member of the post-400
week beneficiary group becomes ineligible to receive further
death benefits, his or her share is put back into the compensation
"pot," and the entire award is redistributed equally among the re-
maining eligible beneficiaries. We disagree.

To us, the plain terms of G.S. 97-38 express a clear legislative
intent that the employer and its insurance carrier pay the *full
amount* of the specified compensation *for 400 weeks* (approximate-
ly 7.7 years), or the commuted present value of that sum, if the
deceased employee is survived by dependents or next of kin. G.S.
97-38(1)—(3), 97-40. That is the overall, governing aim of the
statute, and we are compelled thereby to conclude that, if there is
a decrease in the dependent beneficiary pool *during* the 400
weeks following the employee's death, there must be a corre-

sponding reapportionment of the full award payable for that set period among the remaining eligible members of the pool. *See* G.S. 97-38(1), quoted *supra. See generally* 99 C.J.S. Workmen's Compensation § 324(e) (1958). That, we hold, is the only situation in which there will be an increase in the amount of the individual shares paid to the dependents still partaking of the compensation fund. For purposes of this case, it suffices to say that the underlying logic of the statute evinces no reason for decreasing the employer's or carrier's *400-week obligation* based merely upon a decrease in the number of persons to whom such payments must be made and that the result we reach is certainly consistent with the tenor of prior decisions indicating that the rights and liabilities arising under G.S. 97-38 attach in a final sense at the time of the employee's death so that the award then determined is not thereafter extinguished *on the payor's end* until it has been paid in full. *See Hill v. Cahoon*, 252 N.C. 295, 113 S.E. 2d 569 (1960); *Queen v. Fibre Co.*, 203 N.C. 94, 164 S.E. 752 (1932); *Brooks v. Clement Co.*, 201 N.C. 768, 161 S.E. 403 (1931). We are not, however, likewise persuaded that a necessary corollary of the statute's primary goal is the broader theory contended for by plaintiffs whereby the employer's or carrier's obligation to a *particular dependent beyond the 400 weeks* is effectively increased due to an event which terminates the similar extended right of some other person to continue receiving his or her equal share of the death benefits after such time.

The legislative history of G.S. 97-38 is significant in this respect. Prior to 1975, workers' compensation death benefits were awarded in an appointed sum for a flat period under the statute. Benefits were not paid to anyone upon any basis beyond the stated term. The General Assembly created an exception to that rule in 1974 by ratifying an amendment to G.S. 97-38 entitled "An Act to Amend the Workmen's Compensation Act Regarding the *Duration* of Benefits." 1973 Sess. Laws, ch. 1308, § 4 (emphasis added). That amendment added language authorizing the continuation of compensation payments beyond 400 weeks to the deceased employee's spouse or child for so long as he or she continued to be "dependent" in a factual or legal sense.

On the face of it, the 1974 amendment to G.S. 97-38 was enacted as a simple means to accomplish a limited end, *i.e.*, the expansion of coverage for two distinct classes of dependents. *See*

*also Caldwell v. Realty Co.*, 32 N.C. App. 676, 681, 233 S.E. 2d 594, 597, *discretionary review denied*, 292 N.C. 728, 235 S.E. 2d 782 (1977). The organization of the amended version of G.S. 97-38 also strongly suggests that the portion dealing with the extended rights of a dependent spouse or child was meant to stand upon its own footing. Consequently, we believe that the specific provisions of subsections (1)—(3) are substantively separate therefrom for the most part. When the statute is so read, the legislature's failure to use the word "entire" to qualify or quantify the amount of compensation to be paid these specially covered dependents is important, and we must give meaningful effect thereto in our construction of the statute.

The 1974 amendment does not plainly say, as it so easily could have with a few more strokes of the pen, that a dependent spouse or child is entitled to receive the entire amount of all compensation due from the employer or carrier on account of the employee's death. Instead, the amendment only says that the compensation payments *due the dependent* shall continue to be paid. There is no indication that that which is due a dependent during the period of extended coverage may vary from that which was due during the initial 400 weeks of coverage. In short, the omission of an explicit and clear mandate concerning the entitlement of the designated dependents to receive, and the obligation of the employer or carrier to pay, the *full* award beyond the initial period, as opposed to the dependents' previously determined shares thereof, is critical, and we shall not overlook it or attempt to fill its void by means of this judicial opinion. We hold that G.S. 97-38 does not permit a reapportionment of the entire compensation award among eligible dependents *after* 400 weeks have elapsed.

Our interpretation of the statute as it is written accords completely with its overriding policy of providing death benefits, *at a fixed rate for a fixed period,* to the *individual* dependents of an employee who has met with an untimely and unexpected demise. It should also be noted that it was never contemplated that the Workers' Compensation Act would provide full compensation in the event of injury or death or that it would be the equivalent of general accident, health or life insurance. *See Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865 (1963); *Kellams v. Metal Products*, 248 N.C. 199, 102 S.E. 2d 841 (1958). Instead, this legislation

Deese v. Lawn and Tree Expert Co.

was enacted to afford certain and reasonable relief against peculiar hardship. *Kellams v. Metal Products, supra.* Yet plaintiffs complain that the amount of total death benefits payable by the employer or carrier will, although based upon the same average weekly wage, vary greatly from case to case depending on the number and ages of the employee's wholly dependent survivors. The "inequity" that results from this so-called anomaly is inherent in the variety of life itself, and its origins do not strictly spring from the operation of G.S. 97-38. In any event, this is a matter for the legislature to consider and correct, if it be so inclined.

In closing, we mention that we have reviewed cases from other jurisdictions regarding reapportionment of workers' compensation benefits. *See generally* 81 Am. Jur. 2d Workmen's Compensation § 218 (1976 and 1981 Supp.); 99 C.J.S. Workmen's Compensation § 324(e) (1958 and 1981 Supp.). An in-depth analysis of these authorities, which are based upon unique and materially different statutes, would be fruitless and unavailing to our construction of North Carolina's own compensation law, and we shall not engage in lengthy citation here. *See Shealy v. Associated Transport,* 252 N.C. 738, 114 S.E. 2d 702 (1960); *Hill v. Cahoon,* 252 N.C. 295, 113 S.E. 2d 569 (1960); *Rice v. Panel Co.,* 199 N.C. 154, 154 S.E. 69 (1930).

For the reasons stated, the decision of the Court of Appeals and the award of the Industrial Commission are affirmed.

Affirmed.

Justice MITCHELL dissenting.

The interpretation of G.S. 97-38 applied by the majority in the present case will clearly cause the amount of total death benefits payable to workers' dependents to vary wildly from case to case upon no basis other than the number and ages of worker's wholly dependent survivors. Unlike the majority, I do not believe that such results are "inherent in the variety of life itself, and . . . do not strictly spring from the operation of G.S. 97-38."

A comparison of two hypothetical situations involving the death of the same worker is sufficient to reveal the inequitable results which will certainly arise from the application of the ma-

jority's interpretation of the statute. If the worker in the hypothetical case made $270 per week immediately prior to his death, the "total compensation award" or maximum yearly compensation available to his dependents would be 66⅔ percent of this amount or $180 per week without regard to the number of persons wholly dependent upon him at the time of his death. G.S. 97-29; G.S. 97-38. If the hypothetical worker happened to be a widower survived only by one wholly dependent person, a small child one year of age, the weekly benefit of $180 would be paid to that child alone until he reached 18 years of age. When the child reached the age of 18 years, the compensation paid at $180 per week for 17 years would amount to a total of $159,120. This would be true regardless of the manner in which we resolve the issues before us today.

If the same hypothetical worker was a widower and happened to be survived by three wholly dependent minor children whose ages were one year, five years and ten years respectively, a far different result would be required under the interpretation of the statute employed by the majority. Under the majority's interpretation of G.S. 97-38 the "total compensation award" or maximum weekly compensation of $180 per week would be divided equally with each child receiving $60 per week until he reached 18 years of age. The one year old child would receive $60 per week for 17 years for a total of $53,040. The five year old child would receive $60 per week for 13 years for a total of $40,560. The ten year old child would receive $60 per week for 8 years or a total of $24,960. The total amount paid the three minor children would be $118,560 or $40,560 less than the $159,120 received by the sole surviving minor child in the first hypothetical situation.

In my view, such inequities are created primarily by the majority's interpretation of G.S. 97-38 and are not "inherent in the variety of life itself." It is frequently said that variety is the spice of life. Assuming this to be the case, the dish served by the majority is too heavily spiced to suit my taste.

I believe that a proper construction of the statute would allow the dependents of the deceased worker in the second hypothetical situation to receive $180 per week until the youngest of the three children reached 18 years of age with the $180 being divided each week among those still eligible to receive a share. G.S. 97-38(1) provides that:

Persons wholly dependent for support upon the earnings of the deceased employee at the time of the accident shall be entitled to receive the *entire compensation payable* share and share alike to the exclusion of all other persons. If there be only one person wholly dependent, then that person shall receive the *entire compensation payable*.

(Emphasis added.) The general provision of G.S. 97-38 providing for the continuation of "compensation payments" to a disabled spouse or minor child beyond the 400 week period is, in my view, amplified and extended by the specific provisions of subsection (1) commanding that dependents of the deceased worker receive the "entire compensation payable." When these provisions are read together, it is my view that they are entirely consistent and harmonious and manifest a legislative intent that the term "entire compensation payable" be construed as referring to the required total compensation award of 66⅔ percent of the average weekly wage earned by the deceased immediately prior to his death. Further, I find that the manifest legislative intent was that this total compensation award or "entire compensation payable" be paid so long as there are beneficiaries eligible to take. *See generally* 81 Am. Jur. 2d *Workmen's Compensation* § 218 (1976 and 1981 Supp.); 99 C.J.S. *Workmen's Compensation* § 324(e) (1958 and 1981 Supp.). When a member of the post-400 week beneficiary group becomes ineligible to receive further benefits, that portion of the "entire compensation payable" previously distributed to him should be distributed to the remaining eligible beneficiaries.

I would point out that the interpretation of the statute for which I argue would not remove the inequities "inherent in the variety of life itself." If a worker dies leaving three small children, each of them would still receive less total compensation than he would have received had he been the sole surviving wholly dependent minor child of the same worker. This type of inequity faces every child who has brothers or sisters and is truly "inherent in the variety of life itself."

The interpretation I suggest would, however, prevent the harsh and inequitable results which will arise as a result of the majority's interpretation of the statute. The opinion of the majority compounds and exacerbates the inequities "inherent in the variety of life itself." It will in many cases cause a worker's minor

dependent children who have brothers and sisters to receive not only less individually than a sole dependent child of the same worker would have received, but also less as a class than such sole dependent child would have received individually. I do not believe that the General Assembly intended or the language of the statute requires any such result.

Even if it is conceded *arguendo* that the statute in question lends itself as easily to the interpretation applied by the majority as to the interpretation for which I argue, the plaintiffs here should prevail under established rules of statutory construction applicable to the Worker's Compensation Act. In seeking to discover the legislative intent behind the Act, this Court must consider the language of the Act, the spirit of the Act, and what the Act seeks to accomplish. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). Additionally, the Worker's Compensation Act should be liberally construed, whenever appropriate, so that benefits will not be denied upon mere technicalities or strained and narrow interpretations of its provisions. *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976); *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). In my view, these rules mandate that G.S. 97-38 be interpreted to provide for a reapportionment of the *entire* amount of the total compensation award among the remaining dependent minor children in equal shares as each child reaches the age of 18, after the expiration of the initial compensation period of 400 weeks.

For these reasons I respectfully dissent from the opinion of the majority and vote to reverse the Court of Appeals.

Justices EXUM and CARLTON join in this dissenting opinion.