FRIDAY v. CAROLINA STEEL CORP.

[139 N.C. App. 802 (2000)]

———————

ANNIE LOWERY FRIDAY, WIDOW OF CLARK FRIDAY, DECEASED EMPLOYEE, PLAINTIFF v. CAROLINA STEEL CORP., EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA99-1043

(Filed 29 August 2000)

**Workers' Compensation— death benefits—reapportionment**

The Industrial Commission did not err as a matter of law in concluding that plaintiff-widow was not entitled to a reapportionment of death benefits upon her daughter's eighteenth birthday during the initial 400-week period for payment of death benefits under N.C.G.S. § 97-38 for dependents of an employee whose death proximately results from compensable injury or occupational disease, because: (1) each recipient's share is fixed at the date of decedent's death for the initial period of 400 weeks; and (2) there was no decrease in the payor's obligation before the full 400 weeks payment to the dependent child was complete.

Judge EAGLES concurring.

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission entered 17 March 1999. Heard in the Court of Appeals 15 May 2000.

*Robert Winfrey for the plaintiff-appellant.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, by G. Thompson Miller, for the defendant-appellees.*

LEWIS, Judge.

Plaintiff Annie Lowery Friday appeals from an opinion and award of the North Carolina Industrial Commission denying her request for a reapportionment of death benefits. Plaintiff's husband, Clark Friday ("decedent"), died on 2 March 1989 as a result of a compensable

**FRIDAY v. CAROLINA STEEL CORP.**

[139 N.C. App. 802 (2000)]

injury. On 16 August 1989, the parties filed a Form 30 in which they stipulated that Annie Friday and Versie Friday, the spouse and daughter of the decedent, were dependents entitled to receive death benefit payments from the defendants. The parties stipulated to death benefit payments for both dependents in the amount of $328.21 per month for a period of 400 weeks. The Industrial Commission approved the agreement.

N.C. Gen. Stat. § 97-38, which provides for payment of death benefits for dependents of an employee whose death proximately results from compensable injury or occupational disease, provides in pertinent part:

> If death results proximately from a compensable injury . . . the employer shall pay . . . to the person or persons entitled thereto as follows:
>
> (1) Persons wholly dependent for support upon the earnings of the deceased employee at the time of the accident shall be entitled to receive the *entire* compensation payable share and share alike to the exclusion of all other persons . . .
>
> * * *
>
> Compensation payments due on account of death *shall be paid for a period of 400 weeks* from the date of the death of the employee; provided, however, after said 400-week period in case of a widow or widower who is unable to support herself or himself because of physical or mental disability as of the date of death of the employee, . . . compensation payments due a dependent child *shall be continued* until such child reaches the age of 18.

(Emphasis added.)

At the time of the decedent's death Versie Friday was seventeen years old; however, she turned eighteen during the 400-week period. Defendants nonetheless continued to issue Versie death benefits for the entire 400 weeks. Annie Friday, who is blind, has continued to receive benefits beyond the 400-week period as required under G.S. 97-38 for a widow with a physical disability. On 6 October 1997, after the 400 weeks expired, Annie Friday filed a Motion to Set Aside the Form 30. In that motion, she first alleged defendants were required to stop payment of death benefits to Versie as of her eighteenth birthday and reapportion Annie's benefits such that she would

FRIDAY v. CAROLINA STEEL CORP.

[139 N.C. App. 802 (2000)]

receive the defendants' entire payment obligation for the duration of her entitlement. Plaintiff also alleged that because defendant Liberty Mutual's insurance adjuster told plaintiff it was not necessary to hire an attorney in this matter, the Form 30 was entered as a result of fraud, misrepresentation or mutual mistake.

Plaintiff's motion was set for hearing on 22 January 1998. Prior to the hearing, however, the parties agreed to have the issue in dispute decided by the Deputy Commissioner based upon the stipulations set forth in the parties' pre-trial agreement, prior orders of the Industrial Commission and all affidavits filed with plaintiff's motion. On 17 March 1998, Deputy Commissioner John A. Hedrick entered an order concluding plaintiff was not entitled to a reapportionment of benefits as of her daughter's eighteenth birthday, citing G.S. 97-38, *Deese v. Southern Lawn and Tree Expert Co.* and *Allen v. Piedmont Transport Services, Inc.* (citations omitted), and that the Form 30 was not entered as a result of fraud, misrepresentation, undue influence or mutual mistake.

On 23 March 1998, plaintiff filed notice of appeal to the Full Commission. On 17 March 1999, the Full Commission entered an Opinion and Award denying plaintiff's claim, also citing *Deese* and *Allen* as supporting authority. Plaintiff appeals from the Opinion and Award of the Full Commission.

On appeal from an order of the Industrial Commission, our jurisdiction is limited to questions of law, namely, whether there was competent evidence before the commission to support its findings of fact and whether those findings justify the legal conclusions and ultimate decision of the commission. *Allen*, 116 N.C. App. 234, 236, 447 S.E.2d 835, 836 (1994). On appeal, plaintiff has only assigned error as to the commission's conclusions of law, and we review them accordingly.

Plaintiff first contends the Commission erred as a matter of law in concluding she was not entitled to a reapportionment of death benefits upon her daughter's eighteenth birthday. Specifically, plaintiff contends that when Versie turned eighteen, the pool of dependent beneficiaries decreased during the 400-week period, entitling plaintiff to a reapportionment of death benefits under *Deese*. We disagree.

Addressing this contention necessarily involves our determination of whether defendants properly paid Versie after her eighteenth birthday for the full 400 weeks, or whether they were required to stop payment upon her eighteenth birthday and issue benefits for less than

400 weeks. For this analysis, we turn first to G.S. 97-38. This Court has noted "the General Assembly intended to fix each recipient's share at the date of the decedent's death," *Chinault v. Pike Electrical Contractors*, 53 N.C. App. 604, 606, 281 S.E.2d 460, 462 (1981), *aff'd*, 306 N.C. 286, 293 S.E.2d 147 (1982), and indeed, the express language of G.S. 97-38 supports this interpretation. The statute provides that a dependent beneficiary has a vested right to payment of death benefits "for a period of 400 weeks" upon the decedent's death. N.C. Gen. Stat. § 97-38. Although G.S. 97-38 specifically addresses the situation where payments will be extended *beyond* 400 weeks, the express language does not indicate any situation in which the vested right to a 400-week payment period may be shortened. Absent such language in the statute, it is clear that Versie was entitled to payment for a full 400 weeks and defendants were not required to stop payment upon her eighteenth birthday.

Plaintiff, however, contends that *Deese*, 306 N.C. 275, 293 S.E.2d 140 (1982), and *Allen*, 116 N.C. App. 234, 447 S.E.2d 835 (1994), support the alternate conclusion that the beneficiary pool did in fact decrease when Versie turned eighteen, thus entitling plaintiff to a reapportionment of benefits.

Indeed, *Deese* contains the following language: "[I]f there is a decrease in the dependent beneficiary pool *during* the 400 weeks following the employee's death, there must be a corresponding reapportionment of the full award payable for that set period among the remaining eligible members of the pool." *Deese*, 306 N.C. at 279-80, 293 S.E.2d at 144. We have already concluded that Versie was entitled to a full 400 weeks' payment under the statute, and thus, the pool of dependent beneficiaries did not decrease. Furthermore, unlike this case, *Deese* dealt with the specific issue of whether G.S. 97-38 permits a reapportionment of benefits among eligible dependents *after* the initial 400 weeks. *Id.* at 277, 293 S.E.2d at 142. The beneficiary pool in *Deese* consisted of the decedent's wife and three minor children. *Id.* The issue for review was whether G.S. 97-38 required a reapportionment of the entire amount of payable death benefits among the remaining dependent children in equal shares as each child reached the age of eighteen, *after* the expiration of the initial 400 weeks. *Id.* The remaining minor beneficiaries argued that each time a child turned eighteen during the post-400 week period and was no longer entitled to receive benefits, his share must be put back into the "compensation pot" and the entire award redistributed equally to the remaining eligible beneficiaries. *Id.* at 279, 293 S.E.2d at 144.

The court held "G.S. 97-38 does not permit a reapportionment of the entire compensation award among eligible dependents *after* 400 weeks have elapsed," noting that were such a reapportionment allowed the payor's obligation beyond the 400 weeks would be effectively increased. *Id.* at 281, 293 S.E.2d at 145. In explanation, the court made the following distinction:

> [I]f there is a decrease in the dependent beneficiary pool *during* the 400 weeks following the employee's death, there must be a corresponding reapportionment of the full award payable for that set period among the remaining eligible members of the pool. That, we hold, is the only situation in which there will be an increase in the amount of the individual shares paid to the dependents still partaking of the compensation fund.

*Id.* at 279-80, 293 S.E.2d at 144 (citations omitted.) The court noted its concern that the payor of death benefits would be able to avoid its obligation for less than 400 weeks, in abrogation of G.S. 97-38:

> [T]he underlying logic of the statute evinces no reason for *decreasing* the [payor's] *400 week obligation* based merely upon a decrease in the number of persons to whom such payments must be made . . . [since] the rights and liabilities arising under G.S. 97-38 attach in a final sense at the time of the employee's death so that the award then determined is not thereafter extinguished *on the payor's end* until it has been paid in full.

*Id.* at 280, 293 S.E.2d at 144.

The facts of this case neither violate the specific holding in *Deese* nor the concerns mentioned in conjunction with that holding. Under G.S. 97-38, there was no *decrease* in the payor's obligation before the full 400 weeks payment to Versie was complete. *See also* Commissioner J. Randolph Ward, *Primary Issues in Compensation Litigation*, 17 Campbell L. Rev. 443, 480 (1995) ("Despite dicta to the contrary in [*Deese*], it appears to be settled that the class of beneficiaries becomes fixed according to their status 'at the time of the accident' or at the date of the decedent-employee's death. All qualifying beneficiaries obtain a vested right to the death benefit, or their share of it, for a period of four hundred weeks following the death . . . .") Having completed their obligation, defendants were not then required to effectively *increase* their obligation beyond the 400-week period—which would be the result were plaintiff's argument in this respect followed.

Here, Versie was properly paid benefits for the entire 400 weeks under G.S. 97-38 and as such, the pool of dependent beneficiaries did not decrease and no corresponding reapportionment of benefits was required under *Deese*. Accordingly, the Commission did not err as a matter of law in concluding plaintiff was not entitled to a reapportionment of benefits.

In addition, we note the holding in *Allen*, 116 N.C. App. at 239, 447 S.E.2d at 838, no more compels the conclusion that defendants were required to stop payment to Versie on her eighteenth birthday and reapportion plaintiff's benefits than the court's specific holding in *Deese* itself. In *Allen*, the decedent died with two children, a fourteen-year-old son and a twenty-five-year-old daughter. *Id.* at 235, 447 S.E.2d at 836. The son was declared the sole dependent beneficiary entitled to receive death benefits but turned eighteen *during* the 400-week period. *Id.* Citing *Deese*, the daughter claimed when her brother turned eighteen the beneficiary pool decreased from one to zero entitling her to share in the benefits. *Id.* at 239, 447 S.E.2d at 838. The *Allen* Court concluded the son was entitled to receive the *entire* compensation payable under G.S. 97-38(1), and thus, the dependent beneficiary pool did not decrease and the daughter was not entitled to share in the benefits. *Id.*

Because we find no error as to the Commission's first conclusion of law, we find it unnecessary to address plaintiff's contention regarding the presence of fraud, misrepresentation and mutual mistake in entering the Form 30.

Affirmed.

Judge EDMUNDS concurs.

Chief Judge EAGLES concurs with separate opinion.

Judge EAGLES concurring.

I concur. I agree with the majority that the pool of beneficiaries did not decrease on Versie Friday's (Versie) 18th birthday. I write separately to emphasize my separate basis for that conclusion. The majority reasons that Versie was entitled to the full 400 weeks of benefits because G.S. § 97-38 does not denote any situation where the vested right to a 400 week payment may be shortened. I agree that the

act does not speak of shortening benefits. However, the answer to this question lies in a separate part of Chapter 97.

Under G.S. § 97-38,

[i]f death results proximately from a compensable injury . . . the employer shall pay . . . to the person or persons entitled thereto as follows:

(1) Persons wholly dependent for support upon the earnings of the deceased employee at the time of the accident shall be entitled to receive the entire compensation payable share and share alike to the exclusion of all other persons.

G.S. § 97-39 (1999) states "[t]he widow, or widower and all children of deceased employees shall be conclusively presumed to be dependents of deceased and shall be entitled **to receive the benefits of this Article for the full periods specified herein.**"(Emphasis added). These statutes make clear that a child of a deceased employee is a dependent who shares benefits with other dependents for the full 400 weeks. Therefore, since Versie remained a "child" under Chapter 97, she was entitled to the full 400 weeks of benefits.

Under G.S. § 97-2(12) (1999), a " '[c]hild' . . . include[s] only persons **who at the time of the death of the deceased employee** are under 18 years of age." (Emphasis added). Therefore, if an individual is under 18 at the time of the employee's death then that individual is a "child" under the act. The implication from this definition is that an individual remains a "child" for purposes of Chapter 97 even if that individual turns 18 before the 400 weeks has elapsed. The end result is that the "child's" interest vested at the time of the employee's death. Though arguably dicta, this Court has implied that a child does not lose his or her right to payment by turning 18 during the 400 weeks. "Scott will continue receiving payments after he reaches age 18 because he will turn 18 before the 400-week period expires." *Allen v. Piedmont Transport Services*, 116 N.C. App. 234, 237, 447 S.E.2d 835, 837 (1994).

All parties acknowledge that Versie was a "child" under § 97-2 at the date of death. Therefore, Versie did not and could not exit the class of beneficiaries by simply turning 18 during the 400 weeks. Accordingly, she was entitled to payment for the full 400 weeks and defendants were not required to cease payments. Since the beneficiary class did not decrease, plaintiff was not entitled to any reapportionment of benefits.