***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick.
 *********** EVIDENTIARY MATTERS
Plaintiff filed a motion dated July 16, 2010 to submit additional evidence. However, on July 23, 2010, plaintiff notified the Industrial Commission that plaintiff wished to withdraw the motion to submit additional evidence. Plaintiff is hereby allowed to withdraw the July 16, 2010 motion to submit additional evidence. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. On April 8, 2008, an employment relationship existed between employee and employer.
2. On April 8, 2008, defendant was self-insured, and the North Carolina League of Municipalities was the Administrator for purposes of the Workers' Compensation Act.
3. On April 8, 2008, plaintiff sustained a compensable injury by accident while he was training as a volunteer firefighter for the Town of Pine Knoll Shores Fire Department. The nature of the injury is specified in the stipulated medical records.
4. Before plaintiff sustained the injury on April 8, 2008, he had been employed as a mechanic at Sears Auto Service. However, as of the date of injury, he was no longer employed with Sears.
5. On September 18, 2008, Dr. Douglas Messina released plaintiff to return to full duty for his work-related injury. However, since February 12, 2009, plaintiff has been released from work by his authorized treating physicians as a direct result of the work-related injury at issue in this claim.
6. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement; and *Page 3 
 • Exhibit 2: Compilation of Documents including Industrial Commission Forms, Plaintiff's Medical Records, Discovery Responses and Plaintiff's Recorded Statement.
7. The issues for determination are as follows:
 a. Has plaintiff experienced a change of condition under N.C. Gen. Stat. § 97-47?
 b. Is plaintiff entitled to disability compensation at the statutory minimum set for volunteer firefighters by N.C. Gen. Stat. § 97-2(5)?
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is 39 years old. Since he was six years old, plaintiff has been a Type 1 diabetic, which renders him insulin-dependent.
2. Plaintiff obtained a high school equivalency certificate by passing the General Educational Development Test (GED) from Vance Granville Community College in 2000. Until he commenced firefighter training at the Crystal Coast Fire Academy on April 11, 2008, plaintiff had been steadily employed as an automobile mechanic since 1988.
3. In early 2008, plaintiff began working as a volunteer firefighter for the Town of Pine Knoll Shores Fire Department. Plaintiff testified that it was his ambition to obtain the necessary State certification and become a full-time professional firefighter. He volunteered from ten to thirty hours per week. *Page 4 
4. While a volunteer with the fire department, plaintiff worked part-time as an auto mechanic with Sears Automotive. The last day plaintiff worked at Sears was March 23, 2008, and he was last paid on April 4, 2008. Plaintiff left his position at Sears immediately before beginning the Crystal Coast Fire Academy in Morehead City, North Carolina.
5. While volunteering with the Pine Knoll Shores Fire Department, plaintiff learned of the Crystal Coast Fire Academy. Although he was not required to attend the academy, his fellow firefighters told him it was the fastest way to obtain certification. After attending the five-month program, plaintiff would have been certified and eligible for hire as a professional firefighter. Plaintiff successfully underwent a physical fitness test on March 30, 2008, and began the Academy on April 1, 2008.
6. On April 8, 2008, plaintiff was on a one and one-half mile run at the Academy for physical training. While running, he tried to step up on a curb but landed awkwardly on his left foot. The front half of his foot landed on the curb, but the back half landed on the pavement below. Plaintiff immediately reported the injury to the Academy supervisors. Defendant accepted the claim as compensable with the filing of a Form 60 Employer's Admission of Employee'sRight to Compensation, dated April 28, 2008.
7. After treating initially at an urgent care, plaintiff eventually presented to an orthopaedic surgeon, Dr. Douglas Messina. Dr. Messina diagnosed a "comminuted fracture of the posterior tuberosity of the calcaneous," essentially a fractured heel. Dr. Messina treated plaintiff conservatively by placing him in a walking boot and gradually increasing his weight-bearing. On September 19, 2008, Dr. Messina opined plaintiff was at maximum medical improvement and released him to full duty, with a five percent rating to his the foot. *Page 5 
8. Ms. Ruth Thompson, an adjuster with the North Carolina League of Municipalities with ten years of experience, prepared the Form 26A Employer's Admission of Employee's Right to Permanent PartialDisability for the payment of plaintiff's rating. In the Form 26A, Ms. Thompson stipulated that plaintiff's average weekly wage was $786.00 and his compensation rate was $524.03. Ms. Thompson based her calculations on the "minimum compensation" payable to volunteer firefighters under N.C. Gen. Stat. § 97-2(5) of the Workers' Compensation Act. Both Ms. Thompson and plaintiff signed the agreement, which was approved by the Industrial Commission on October 22, 2008. Plaintiff was paid $3,773.02 in permanent partial disability benefits.
9. When Ms. Thompson paid the rating, she also paid plaintiff one day of temporary total disability benefits in the amount of $74.86, pursuant to instructions from an Industrial Commission claims examiner who reviewed the Form 26A. As Ms. Thompson testified, the Form 26A agreement would not be approved unless she paid the day of temporary total disability benefits.
10. Although released to return to work by Dr. Messina, plaintiff continued to experience pain and swelling in his left heel, which grew progressively worse. Plaintiff again presented to Dr. Messina on February 12, 2009, who took x-rays, which revealed that the tuberosity had become displaced. Dr. Messina excused plaintiff from work and referred him to a specialist for consideration of reconstructive surgery.
11. On June 23, 2009, plaintiff presented Dr. Richard Bruch, an orthopedic surgeon with Triangle Orthopaedic Associates. Dr. Bruch opined that plaintiff had a "major left hindfoot injury resulting in severe impairment." Dr. Bruch further opined that surgery normally would be indicated for such an injury, but he would not perform it, as plaintiff's diabetes created a *Page 6 
significant risk that the surgery would be a "complete failure." Dr. Bruch prescribed Vicodin for plaintiff's pain, released plaintiff completely from work, and referred him to Dr. James K. DeOrio, an orthopedic surgeon at Duke University Medical Center.
12. Plaintiff consulted with Dr. DeOrio, who agreed to perform the surgery on October 9, 2009. Plaintiff has not been released to return to work.
13. It is undisputed that plaintiff is an "employee" pursuant to N.C. Gen. Stat. § 97-2, as evidenced by defendant's acceptance of plaintiff's claim as compensable with the filing of a Form 60 Employer's Admission of Employee's Right to Compensation
dated April 28, 2008. It is also undisputed that plaintiff was no longer working for Sears Automotive or elsewhere at the time of his injury with defendant on April 8, 2008.
14. Defendant has paid medical compensation to plaintiff but disputes that plaintiff is entitled to wage loss benefits, asserting that plaintiff had no "earnings" at the time of injury. Defendant maintains that since plaintiff did not suffer a loss of earnings, he is not entitled to wage loss benefits.
15. Pursuant to N.C. Gen. Stat. § 97-2(5), a firefighter's disability benefits are generally based on "the average weekly wage the volunteer fireman . . . was earning in his employment wherein he principally earned his livelihood as of the date of injury."
16. On November 20, 1984, the Court of Appeals of North Carolina decided James Linville Brown v. Walnut Cove Volunteer FireDepartment, 71 N.C. App. 409, 322 S.E.2d 443. In that case, a volunteer firefighter sustained a back injury while working for the Walnut Cove Volunteer Fire Department. At the time of his injury with the Volunteer Fire Department, the firefighter was not employed, as he had been laid off from his principal employment for approximately eleven months; nonetheless, the North Carolina Industrial Commission awarded *Page 7 
workers' compensation benefits to the firefighter. The Volunteer Fire Department appealed the case and a divided panel of the North Carolina Court of Appeals affirmed the decision of the Industrial Commission. The dissent was based in part, as the case sub judice, on the fact that plaintiff was not earning weekly wages "as of the date of the injury."
17. In a per curiam opinion, the Supreme Court of North Carolina affirmed the decision of the Court of Appeals on June 3, 1986.
18. In what would appear to be an attempt to address the dissent and ensure that volunteer firefighters are eligible to receive disability compensation for their voluntary services to the citizens of the State of North Carolina, on April 11, 1985, less than five months after the Court of Appeals' decision in Brown v. WalnutCove Volunteer Fire Department, Senate Bill 159 was presented to the Senate Committee on Manufacturing and Labor by then Chairman of the North Carolina Industrial Commission, William Stephenson. Included in the Committee's Minutes was a letter from Chairman Stephenson explaining the bill:
 I am attaching hereto the proposed amendment to the Workers' Compensation Act which establishes a minimum weekly benefit for volunteer firemen . . . This would give a volunteer fireman injured in the line of duty a minimum weekly benefit at the present time of $186.67 [sixty-six and two-third percent (66 2/3%) of maximum compensation rate in 1985].
19. The General Assembly passed Senate Bill 159 as Sessions Law 1985-133 in 1985. As passed, the law was entitled: "An Act to Establish a Minimum Weekly Compensation for Certain Volunteer Workers Under the Workers' Compensation Act." The purpose of the legislation was to add the following language to N.C. Gen. Stat. § 97-2(5):
 Provided, however, that the minimum compensation payable to a volunteer fireman . . . shall be sixty-six and two-thirds percent (66 2/3 %) of the maximum weekly benefit established in N.C. Gen. Stat. § 97-29. *Page 8 
20. The Full Commission finds that based on this express language and the liberal construction, whenever appropriate, afforded the Statute, the language and intent of N.C. Gen. Stat. § 97-2(5), as amended in 1985, provide minimum compensation to all volunteer firefighters in the amount of sixty-six and two-thirds percent (66 2/3%) of the maximum weekly benefit established in N.C. Gen. Stat. § 97-29.
21. Based on the greater weight of the medical evidence of record and the stipulation of the parties that plaintiff has been written totally out of work by his authorized treating physicians as a direct result of the work-related injury since February 12, 2009, the Full Commission finds that plaintiff sustained a substantial change of condition representing a worsening of the injury sustained as the result of his April 8, 2008 injury by accident, which necessitated surgery and related medical expenses.
22. As a result of plaintiff's change of condition and statutory authority, the Full Commission finds that plaintiff was unable to earn any wages in his position with defendant or in any other employment since February 12, 2009, when Dr. Messina released plaintiff from work. Accordingly, plaintiff is entitled to temporary total disability benefits commencing February 12, 2009 and continuing, pursuant to N.C. Gen. Stat. § 97-29.
23. The maximum weekly benefit established in N.C. Gen. Stat. § 97-29 in effect at the time of plaintiff's injury on April 8, 2008 was $786.00. Pursuant to N.C. Gen. Stat. § 97-2(5), the minimum compensation payable to a volunteer firefighter is sixty-six and two-thirds percent (66 2/3%) of the maximum weekly benefit resulting in $524.03, as the minimum compensation payable to plaintiff for his April 8, 2008 injury. *Page 9 
24. Based on payroll and tax records submitted by the parties as part of Stipulated Exhibit 2, the Full Commission finds that plaintiff's average weekly wage would be less than the minimum provided under N.C. Gen. Stat. § 97-2(5).
25. The Full Commission finds that the Form 26A approved by the Industrial Commission on October 22, 2008 is binding agreement on the parties. Defendants have not shown that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake in Form 26A agreement as approved by the Industrial Commission.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. At the time of plaintiff's injury, as a volunteer fireman, plaintiff was an employee of defendants as defined by N.C. Gen. Stat. § 97-2. Hix v. Jenkins,118 N.C. App. 103, 453 S.E.2d 551 (1995).
1. On April 8, 2008, plaintiff sustained an admittedly compensable injury by accident to his left foot while he was training as a volunteer firefighter for the Town of Pine Knoll Shores Fire Department. N.C. Gen. Stat. § 97-2(6).
2. The intent of the legislature regarding the operation of a particular provision of the Workers' Compensation Act is "to be discerned from a consideration of the Act as a whole — its language, purposes and spirit." James Linville Brown v. Walnut Cove FireDepartment and Nationwide Mutual Insurance Company71 N.C.App 409, 322 S.E.2d 443, citing Deese Lawn and Tree ExpertCompany, 306 N.C. 275, 278, 293 S.E.2d 140, 143, rehearingdenied, 306 N.C. 753, 303 S.E.2d 83 (1982). *Page 10 
This spirit is one of liberal construction, whenever appropriate, so that benefits will not be denied on mere technicalities.Id.
3. The maximum weekly benefit established in N.C. Gen. Stat. § 97-29 in effect at the time of plaintiff's injury on April 8, 2008 was $786.00. Pursuant to N.C. Gen. Stat. § 97-2(5), the minimum compensation payable to a volunteer firefighter is sixty-six and two-thirds percent (66 2/3%) of the maximum weekly benefit resulting in $524.03, as the minimum compensation payable to plaintiff for his April 8, 2008 injury. Therefore, as stipulated to by the parties on a Form 26A agreement, plaintiff's average weekly wage is $524.03. N.C. Gen. Stat. § 97-2(5).
4. "Once an agreement for compensation has been approved by the Commission, no party shall thereafter be heard to deny the truth of the matters therein set forth, unless it shall be made to appear that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake. Dalton v. Anvil Knitwear,119 N.C. App. 275, 282, 458 S.E.2d 251, 257 (1995). As defendants have not shown fraud, misrepresentation, undue influence, or mutual mistake, defendants may not now deny the terms established in the Form 26A agreement in which the parties stipulated that plaintiff suffered a compensable injury by accident for which plaintiff is entitled to disability benefits at the rate of $524.03. N.C. Gen. Stat. § 97-17; Brookover v. Borden, Inc.,100 N.C. App. 754, 398 S.E.2d 604 (1990).
4. Plaintiff sustained a substantial change of condition representing a worsening of the injury he sustained as the result of his April 8, 2008 injury by accident, which necessitated surgery and related medical expenses. N.C. Gen. Stat. § 97-47.
5. As a result of plaintiff's change of condition and the stipulation of the parties that plaintiff has been written totally out of work by his authorized treating physicians as a direct result of the work-related injury since February 12, 2009, plaintiff was unable to earn any wages *Page 11 
in his position with defendant or in any other employment since February 12, 2009, when Dr. Messina released plaintiff from work and continuing. Accordingly, plaintiff is entitled to temporary total disability compensation at a rate of $524.03 per week from February 12, 2009, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at a rate of $524.03 per week from February 12, 2009, when Dr. Messina excused plaintiff from work, and continuing until further order of the Industrial Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's *Page 12 
counsel and shall be paid by defendant as follows: twenty-five percent of any compensation which has accrued shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the 23rd day of August 2010.
 S/_____________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/________________ DANNY LEE McDONALD COMMISSIONER
 S/_____________ PAMELA T. YOUNG CHAIR
 *Page 1