In accordance with the directives of the North Carolina Court of Appeals, the undersigned find as facts and conclude as matters of law the following, which were entered into by the parties in the Form 21 Agreement for Compensation, approved by the Commission on March 13, 1992, and at the initial hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act, and the employer-employee relationship existed between the parties on January 15, 1992.
2. Defendant is a duly qualified self-insured with Consolidated Risk Management Services as the administering agent on the risk.
3. On January 15, 1992, plaintiff sustained a compensable injury to her left knee.
4. Plaintiffs average weekly wage was $252.80, which yields a weekly compensation rate of $168.54.
5. Plaintiff received weekly total disability compensation payments from February 19, 1992, through the date of the initial hearing, and continuing to the time that the deputy commissioner entered the original opinion and award.
6. The issues for determination upon remand from the Court of Appeals are: what is the nature and extent of plaintiffs disability, and to what compensation benefits is plaintiff entitled therefore?
The Commission takes judicial notice of the Form 21 agreement entered into by the parties on 28 February 1992.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent, credible, and convincing evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the initial hearing before the deputy commissioner, plaintiff was a 40 year-old female who had been employed in September of 1989 as a rough end worker. Plaintiff completed the tenth grade. On January 15, 1992, plaintiff sustained a compensable injury when she tripped and fell, landing on both knees.
2. After plaintiffs knees did not improve, she went out of work on February 19, 1992, and she began treatment with orthopedic surgeon Dr. Stephen C. Fleming on February 16, 1992, for complaints of left knee pain. On March 26, 1992, Dr. Fleming excised a loose body and fibrotic fat pad from plaintiffs left knee. Physical therapy was ordered for the left knee.
3. On March 20, 1992, plaintiff reported to Dr. Fleming that her right knee was fine.
4. On May 11, 1992, plaintiff was seen by Dr. H. Grey Winfield, III, for a second opinion, at which time Dr. Winfield noted that plaintiffs complaints of left knee pain were not present when she was distracted.
5. Dr. Fleming referred plaintiff to the Work Recovery Center, where Dr. Andrea Stutesman saw her on June 29, 1992. Dr. Stutesman noted that plaintiff had normal range of motion in both knees and no swelling or discoloration in either knee. Plaintiff voiced subjective complaints of pain only regarding the left knee.
6. Plaintiff refused to cooperate with physical therapists at the Work Recovery Center, leaving early every session. She refused to participate in exercises to strengthen the upper body. Plaintiff was further uncooperative in that she alleged sitting was too painful, yet she admitted to sitting at the edge of the pool each evening to cool her legs. She was noted to exhibit an abnormal gait that required her to bend her left knee, and she sat in awkward positions that put greater stress on her left knee. These actions were inconsistent with her subjective complaints of pain.
7. On July 16, 1992, Dr. Fleming noted that plaintiffs complaints of left knee pain were out of proportion to the physical findings. No complaints were made by plaintiff regarding her right knee.
8. Due to plaintiffs continued subjective complaints, orthopedic surgeons Dr. Alfred Moretz and Dr. Stutesman recommended a lumbar sympathetic block, which plaintiff refused.
9. Plaintiff refused to attend an April 8, 1993 appointment with Dr. Stutesman, and thereafter on April 16, 1993, the Commission ordered plaintiff to attend a functional capacity evaluation at the Work Recovery Center and to comply with the vocational specialist.
10. Plaintiff attended the functional capacity evaluation but refused to cooperate, rendering the results invalid.
11. On May 24, 1993, then Chief Deputy Commissioner (now Commissioner) Dianne C. Sellers ordered plaintiff to cooperate fully with therapists, due to the noncompliance with the Commissions Order of April 16, 1993.
12. On June 8, 1993, plaintiff was seen by Dr. Stutesman, where complaints of left knee pain were not present when plaintiff was distracted and where plaintiff exhibited an inconsistent range of motion and symptom magnification.
13. On August 10, 1993, plaintiff began treating with orthopedic surgeon Dr. Walton Curl. This treatment was not authorized by defendant and was not authorized by the Industrial Commission except for a one-time visit.
14. Dr. Fleming, Dr. Stutesman, and Dr. Curl have opined and the Commission so finds that plaintiff is capable of performing some range of sedentary work with restrictions, which include a permanent four hour per day restriction, self-pacing, no bending, no stooping, no climbing, and no kneeling.
15. Dave Toney, a vocational counselor retained by defendant, attempted to identify work available within plaintiffs restrictions. The employers identified included two telemarketing firms, a movie cinema, Dominos Pizza, Pizza Hut, and McDonalds. Plaintiff was offered a job at Dominos, which, according to the job description, was to be for four hours per day. However, the record is devoid of any convincing evidence as to the actual hours, terms, or duties of this job. Plaintiff failed to follow up on the interviews for the other jobs.
16. Plaintiff was terminated from Dominos after her first day on February 3, 1994. The Commission, however, is unable to determine from the record the specific reason for plaintiffs termination. The only statement concerning the termination presented at the hearing before the deputy commissioner was a hearsay, second-hand account through Dave Toney, which cannot be accepted as either credible or convincing by the undersigned. Neither plaintiff nor the potential employers at Dominos testified as to the reasons for the termination.
17. Randy Adams, a vocational counselor hired by plaintiff, testified that plaintiff would be at a disadvantage competing against non-disabled applicants for work. However, there is no credible or convincing medical evidence in the record to establish that plaintiff is permanently and totally disabled. Because Mr. Adams opinion is based upon the presumption that plaintiff is permanently and totally disabled, his opinions are given little weight.
18. Plaintiff reached maximum medical improvement as of January 4, 1993 and retains a 20% permanent impairment to her left leg.
19. Plaintiff had not returned to work as of the date of the close of the record in this case with the exception of the one day of employment at Dominos Pizza. Neither defendant nor any other employer has offered plaintiff employment that is suitable to her permanent work restrictions.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on January 15, 1992. The parties entered into a Form 21 Agreement for Compensation, which represents "an admission of liability by the employer for disability compensation pursuant to the Workers Compensation Act. Kisiah v. W. R. Kisiah Plumbing, 124 N.C. App. 72,77, 476 S.E.2d 434, 436 (1996), disc. review denied, 345 343,483 S.E.2d 169 (1997). Once the Form 21 is approved by the Commission, a presumption of total disability exists until defendant successfully rebuts the presumption by showing that suitable jobs are available and also that plaintiff is capable of obtaining one, taking into account physical and vocational limitations. Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 472 S.E.2d 382, cert. denied, 344 N.C. 629, 477 S.E.2d 39
(1996); Kennedy v. Duke Univ. Med. Center, 101 N.C. App. 24,398 S.E.2d 577 (1990).
2. In this case, the presumption of continuing disability was not successfully rebutted by defendant in that defendant has not successfully shown by the competent, credible, or convincing evidence that a job, present in the competitive market, even at reduced earnings, actually exists within plaintiffs permanent restrictions and that plaintiff is capable of obtaining and performing such a job.
3. Plaintiff reached maximum medical improvement as of January 4, 1993 and is entitled to payment of temporary total disability compensation in the amount of $168.54 per week beginning February 19, 1992, and continuing until January 4, 1993. N.C. Gen. Stat.97-29; Carpenter v. Industrial Piping Co., 73 N.C. App. 39,326 S.E.2d 328 (1985).
4. As a result of the compensable injury by accident, plaintiff was totally disabled and entitled to receive payment of total disability compensation in the amount of $168.54 per week from January 5, 1993, and continuing until further Order of the Commission, subject to the suspension period in Paragraph 5 below. N.C. Gen. Stat. 97-29.
5. Plaintiff refused to cooperate with certain approved physicians, physical therapists, and vocational counselors from a period of January 5, 1993 through May 23, 1993. Therefore, any weekly benefits to which plaintiff may have been entitled during this period of time are suspended. N.C. Gen. Stat. 97-25.
6. Plaintiff is entitled to such future medical treatment as may reasonably be required to effect a cure, give relief, or lessen her period of disability. N.C. Gen. Stat. 97-25; Hyler v. GTEProducts Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
7. Dr. Curls treatment did not provide relief, effect a cure, or lessen the period of disability as plaintiff admits that she received no relief, cure, or lessening of disability from his treatment. Plaintiff did not request authorization to seek treatment by Dr. Curl from either the defendant or the Commission. Therefore, the defendant is not responsible for this unauthorized treatment beyond the first visit.
 ***********
Therefore, in accordance with the directives of the North Carolina Court of Appeals, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
 AWARD
1. To the extent it has not already done so, defendant shall pay plaintiff temporary total disability compensation in the amount of $168.54 per week from February 19, 1992 through January 4, 1993.
2. Defendant shall pay plaintiff total disability compensation in the amount of $168.54 per week beginning January 5, 1993 and continuing until further Order of the Commission. This amount is subject to the suspension of compensation for the period of January 5, 1993 through May 23, 1993, based upon plaintiffs failure to accept medical and rehabilitative procedures as ordered by the Commission.
3. Defendant shall pay for all medical expenses plaintiff has incurred or may incur as a result of her compensable injury, provided such treatment is reasonably necessary to effect a cure, give relief, or lessen her period of disability. The approved medical expenses do not include past or future treatment by Dr. Curl.
4. A reasonable attorneys fee of 25% of the compensation awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel and shall be paid directly to counsel.
5. Defendant shall pay the costs of this appeal.
This the ___ day of August, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER