***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman, and the briefs and oral arguments on appeal. The appealing parties have shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 2 November 2000 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Key Risk Insurance Company is the insurance carrier for said defendant-employer.
3. An employer-employee relationship existed between the deceased employee and defendant-employer on 9 November 1999, the admitted date of the accident.
4. The deceased employee sustained a compensable injury by accident arising out of his employment with defendant-employer, resulting in his death on 9 November 1999.
5. The deceased employee's average weekly wage at the time was $709.10, yielding a compensation rate of $472.76.
6. The deceased employee was the biological son of Mr. James Goodrich and Ms. Mae Goodrich, who are parties to this action, and claim to be entitled to workers' compensation benefits as the employee-plaintiff's only next-of-kin eligible to receive benefits pursuant to G.S. § 97-38
and G.S. § 97-40.
7. The deceased employee was married to Ms. Constance C. Goodrich, who is a party to this action, and claims to be entitled to benefits as the deceased employee's widow.
8. At the time of the deceased employee's death, he resided at 105 Red Tip Lane, Goldsboro, North Carolina, and Ms. Constance Carver Goodrich resided at 103 Decoy Drive, Pikeville, North Carolina.
9. On 5 November 1999, the deceased employee filed a verified complaint for divorce wherein he indicated that he had lived separate and apart from Ms. Constance C. Goodrich since 20 August 1998, with the intent to remain separate and apart.
10. There were no children born of the marriage between the deceased employee and Ms. Constance C. Goodrich.
11. In addition, the parties stipulated into evidence the following:
a. A Birth Certificate for Douglas Alwyn Goodrich.
b. A Death Certificate for Douglas Alwyn Goodrich.
 c. A Marriage certificate for Mr. Douglas A. Goodrich and Ms. Constance Carver Hanner.
 d. Ms. Constance C. Goodrich's responses to Mr. James Goodrich's and Ms. Mae Goodrich's interrogatories and request for production of documents.
 e. Ms. Constance C. Goodrich's responses to defendants' interrogatories and request for production of documents.
 f. Defendants' response to plaintiffs' interrogatories.
g. Documents from District Court case # 99-CVD 2613.
h. A Warrant in 98 CR013586.
i. Bank records from BB T.
j. Tax returns.
k. A Check dated 26 June 1999.
 l. A Check dated 19 November 1998 with a deposit slip and cash out ticket.
m. A Check dated 6 August 1998 with a deposit ticket.
 *********** EVIDENTIARY RULINGS
The Full Commission adopts the evidentiary rulings of the Deputy Commissioner. Specifically, defendants' Exhibits 10, 11 and 12 have not been received into evidence over objection. Defendants' Exhibit 10 has been found not relevant, defendants Exhibit 11 was not properly authenticated and defendants' Exhibit 12 cannot be heard with the equipment at the Industrial Commission.
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. The deceased employee, hereinafter decedent, was born on 15 December 1966, and was employed by defendant-employer as a floor installer. Decedent was assigned to, and was a member of a crew that worked together to complete designated jobs. Most of the jobs were not local, thereby requiring the crew to travel out of town. Consequently, decedent was usually gone during the week and would return home for weekends.
2. On 22 April 1995 decedent married Ms. Constance Carver Hanner, thereafter Constance C. Goodrich. At the time of the marriage, Ms. Constance C. Goodrich had three children from previous relationships. Each of the children's fathers was no longer living, and Ms. Constance C. Goodrich was receiving social security benefits from the fathers' accounts for the support of the children. No children were born to the marriage between Ms. Constance C. Goodrich and decedent, and decedent had no natural children of his own.
3. Ms. Constance C. Goodrich and decedent were separated in August 1999. Also in August 1999 Ms. Constance C. Goodrich began an adulterous relationship with Mr. Steve Herring, who had performed work at the residence where she and decedent lived. Evidence supports a finding that there was an altercation between decedent and Ms. Constance C. Goodrich following his discovery of her affair. Thereafter, decedent moved out of the family residence, leaving Ms. Constance C. Goodrich and decedent's three stepchildren remaining. The title of the mobile home was in decedent's name.
4. Following the couple's separation, and prior to decedent's death, the household expenses for his three minor stepchildren totaled approximately $1,890.53. This total consisted of the following: house payment, $432.00; land payment, $163.53; car payment, $420.00; phone bill, $50.00; electric bill, $150.00; water bill, $25.00; groceries, $500.00, and gasoline, $100.00. The credible evidence of record supports a finding that during this period, decedent paid for all of these household expenses for the residence of his three stepchildren. Additionally, during this period, decedent provided funds for the purchase of his three stepchildren's' clothes, school fees, and vacations. Furthermore, decedent also funded expenses associated with a credit card and made furniture payments for the residence of his three stepchildren.
5. There is no evidence of record that any of decedent's three minor stepchildren earned any income on their own.
6. Ms. Constance C. Goodrich's income for 1998 was $667.00, and for 1999 was $1,730.00. Ms. Constance C. Goodrich also received social security payments as the result of the deceased father of each of the stepchildren. For Andrew Hanner and Allen Hanner, she received $116.00 per month for each child. For Daniel Rohde, she received $532.00. The total social security benefits received by Ms. Constance C. Goodrich each month was $764.00.
7. Total household expenses for the residence of the three stepchildren prior to decedent's death, and following his separation from Ms. Constance C. Goodrich were approximately $31,000.00. When this total is divided by four, represented by Ms. Constance C. Goodrich and the three stepchildren, $7,758.00 per year is allocated for each of the minor stepchildren.
8. Allen Hanner and Andrew Hanner received $1,392.00 each year from social security. Upon considering the total contributions from decedent, social security and Ms. Constance C. Goodrich, decedent provided $28,496.00 of the $30,550.00 household income for 1998 for Allen and Andrew Hanner, or ninety-three percent (93%). This calculation excludes the social security benefits received for Daniel Rohde. For 1999, again excluding social security benefits received for Daniel Rohde, the total household income was $31.760.00. For that year, decedent provided ninety percent (90%) of the financial support for Allen and Andrew Hanner.
9. Daniel Rohde received $6,384.00 per year from social security. Upon considering the total contributions from decedent, social security, and Ms. Constance C. Goodrich, decedent provided $28,496.00 of the $35,547.00 household income for 1998 for Daniel Rohde, or eighty percent (80%). For 1999, again excluding social security benefits received for Allen and Andrew Hanner, the total household income was $36,752.00. For that year, decedent provided seventy-eight percent (78%) of the financial support for Daniel Rohde.
10. Tax records in evidence show that decedent claimed the three minor stepchildren as dependants on his federal returns for 1995 to 1999. Decedent also claimed these stepchildren for 1995 to 1999 on his North Carolina State and Virginia State tax returns. These returns include the period following decedent's separation through the time of his fatal accident.
11. As compared to all other sources of financial support, Andrew Hanner, Allen Hanner, and Daniel Rohde were substantially dependent as stepchildren upon the financial support of decedent in maintaining their accustomed standard of living.
12. Constance Goodrich does not qualify as a widow under the Workers' Compensation Act in that she was not living with decedent at the time of his injury, she was not living apart from him for justifiable cause, and she was not dependent upon him for support.
13. Constance C. Goodrich has had no visible means of support and has a history of being totally dependent on others, including the state, for income. She is not competent to manage money.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. At the time of decedent's death, Ms. Constance Goodrich was not a widow under the Workers' Compensation Act in that she was not living with decedent at the time of his injury, she was not living apart from him for justifiable cause, and she was not dependent upon him for support. G.S. § 97-2(14). Therefore, because Ms. Constance Goodrich was not a "widow" pursuant to G.S. § 97-2(14), she is not conclusively presumed to have been wholly dependent upon decedent at the time of his death. G.S. § 97-38; G.S. § 97-39.
2. As compared to all other sources of financial support Andrew Hanner, Allen Hanner, and Daniel Rohde were substantially dependent as stepchildren upon the financial support of decedent in maintaining their accustomed standard of living. See, Winstead v. Derreberry,73 N.C. App. 35, 326 S.E.2d 66 (1985). Therefore, under the Act, each of these minor children is conclusively presumed to have been wholly dependent upon decedent at the time of his death. G.S. § 97-38.
3. As wholly dependent upon decedent at the time of his death, the minor Allen Hanner is entitled to receive one-third (1/3) of $472.76 per week, amounting to $157.58 per week. G.S. § 97-39. These payments shall continue until he reaches the age of eighteen or for 400 weeks, whichever is longer. Id.
4. As wholly dependent upon decedent at the time of his death, the minor Andrew Hanner is entitled to receive one-third (1/3) of $472.76 per week, amounting to $157.58 per week. G.S. § 97-39. These payments shall continue until he reaches the age of eighteen or for 400 weeks, whichever is longer. Id.
5. As wholly dependent upon decedent at the time of his death, the minor Daniel Rohde is entitled to receive one-third (1/3) of $472.76 per week, amounting to $157.58 per week. G.S. § 97-39. These payments shall continue until she reaches the age of eighteen or for 400 weeks, whichever is longer. Id.
6. As a result of decedent's fatal injury by accident, plaintiffs are entitled to have defendants pay for all medical expenses incurred. G.S. § 97-25.
7. As a result of decedent's fatal injury by accident, plaintiffs are entitled to have defendants shall pay burial expenses not exceeding $2,000.00 to the person or persons entitled thereto. G.S. § 97-38.
8. Constance C. Goodrich is not competent to manage the money of Andrew Hanner, Allen Hanner, and Daniel Rohde.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to the Wayne County Clerk of Court, for the use and benefit of Allen Hanner, one-third (1/3) of $472.76 per week. This amounts to $157.58 per week. G.S. § 97-39. These payments shall continue until he reaches the age of eighteen or for 400 weeks, whichever is longer. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. § 97-86.2. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay to the Wayne County Clerk of Court, for the use and benefit of Andrew Hanner, one-third (1/3) of $472.76 per week. This amounts to $157.58 per week. G.S. § 97-39. These payments shall continue until he reaches the age of eighteen or for 400 weeks, whichever is longer. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. § 97-86.2. This compensation is subject to the attorney's fee approved herein.
3. Defendants shall pay to the Wayne County Clerk of Court, for the use and benefit of Daniel Rohde, one-third (1/3) of $472.76 per week. This amounts to $157.58 per week. G.S. § 97-39. These payments shall continue until she reaches the age of eighteen or for 400 weeks, whichever is longer. Any accrued amount shall be paid in a lump sum, plus interest pursuant to G.S. § 97-86.2. This compensation is subject to the attorney's fee approved herein.
4. Defendants shall pay all medical expenses incurred as a result of decedent's fatal injury by accident.
Defendants shall pay burial expenses not exceeding $2,000.00 to the person or persons entitled thereto.
Defendants shall pay the costs.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_________________________________ THOMAS JEFFERSON BOLCH COMMISSIONER
 S/_________________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER